CHADWICK ET AL., RESPONDENTS, *v.* TATEM ET AL., APPELLANTS.

WILLS — *Testamentary disposition — Revocation.* — In the case at bar the testator devised to his wife all of the personal estate and one half of all mining property. After the making of the will he executed with his wife a deed in escrow of certain mining property, with a contract for its delivery upon the payment of the specified purchase price. After the death of the testator, and before the expiration of the contract, the grantee of the deed made the necessary payment and received the deed. *Held,* that under sections 461 and 463 of the Probate Practice Act, providing in substance that an agreement by a testator for the sale of property disposed of by will previously made does not revoke such disposal, but the property passes by the will, subject to specific performance against the devisees, and that a conveyance or other act of a testator, by which his interest in a thing previously disposed of by his will is altered, but not wholly divested, is not a revocation, the execution of the deed and contract did not amount to a divestiture of the title of the testator, but that the title passed to the devisees, subject to the conditions so placed upon it, and the divestiture was consummated upon the performance of the condition and the second delivery.

DOWER — *Statutes — Repeals, express and impli d.* — No portion of "an act concerning dower," enacted by the ninth legislative assembly of 1876, is embraced in any section of the Revised Statutes of 1879, and is therefore not expressly repealed by section B, chapter lxx. of the Revised Statutes, providing that "all acts of the legislative assembly passed prior to the twenty-first day of February, 1879, or on said day, any portion of which is embraced in any section of said codification, are hereby repealed," and "that all acts of the legislative assembly passed prior to or on said last-named day, no part of which are embraced in said codification, shall not be affected or changed by its enactment," but is in full force, and has not been repealed by implication by reason of its omission from the Revised Statutes of 1879 and the Compiled Statutes of 1887.

SAME — *Election.* — Where the widow has taken lands devised to her under the provisions of the will, she is barred from claiming dower by sections 6 and 7 of said act concerning dower, which provide in substance, that every devise of lands shall be in lieu of dower, unless within one year after the probate of the will she elect to renounce such devise and take her dower therein.

COMMUNITY PROPERTY. — A widow who has taken by virtue of the will more than one half of the whole estate cannot claim any part of the other half on the ground that the whole estate was community property, under section 551 of the Probate Practice Act, providing that upon the death of the husband one half of the community property goes to the surviving wife, and the other half is subject to the testamentary disposition of the husband.

*Appeal from First Judicial District, Lewis and Clarke County.*

Judgment on the pleadings in favor of the plaintiffs was rendered by McCONNELL, C. J.

*J. C. Robinson,* and *Massena Bullard,* for Appellants.

The property in question at the time of the death of the testator was not a part of his real property, but was personalty, and the widow was, under the will, entitled to the whole of it. We claim this on the principle of law that the estate was by the said deed taken out of the operation of the will as to the realty, and that the deed operated as a revocation of the will to the extent of the property included in the deed. The rule is well settled that deeds of this kind — escrows — ordinarily take effect at the time of the second delivery, that is, when the condition is performed upon which they are to be delivered; but in case of the death of the grantor, and in other cases, after the first delivery, as it is called, and before the second, the title passes at the time of the first — relates back to that time and is effectual from the first delivery. (3 Washburn on Real Property, 273; *Ruggles* v. *Lawson,* 13 Johns. 285; 7 Am. Dec. 375; *Shirley* v. *Ayers,* 14 Ohio, 307; 45 Am. Dec. 546; *Foster* v. *Mansfield,* 3 Met. 412; 37 Am. Dec. 154, and note; *Wheelwright* v. *Wheelwright,* 2 Mass. 447; 3 Am. Dec. 66; *Hatch* v. *Hatch,* 9 Mass. 307; 6 Am. Dec. 67; *Jones* v. *Jones,* 6 Conn. 11; 16 Am. Dec. 35, and note; *Gilmore* v. *Whitesides,* Dud. Eq. 14; 31 Am. Dec. 567; *Jackson* v. *Rowland,* 6 Wend. 666; 22 Am. Dec. 559; *State Bank* v. *Evans,* 3 Green, 155; 28 Am. Dec. 400, and note; *Hathaway* v. *Payne,* 34 N. Y. 106; *Brown* v. *Austin,* 35 Barb. 360; *Wellborn* v. *Weaver,* 17 Ga. 267; 63 Am. Dec. 241; *Calhoun Co.* v. *American Emigrant Co.* 93 U. S. 127; 3 Redfield on Wills, 305.) Section 461 of the Probate Practice Act relative to wills refers to contracts to convey, and has no application to the case at bar whatever. Nowhere in any law or theory of contracts to convey can a question of this kind arise; such a case is not to be found in all the text-books of reports. In this case there was nothing for the grantor to do; the deed was fully executed so far as it lay in the power of the grantor to execute it, and was subject

to become inoperative only by the failure of the grantee to per-
form his part, and the grantor was bound to wait the action of
the grantee named in the deed, and as soon as he acted — per-
formed his condition — the deed took effect at the date of its first
delivery. It was in no sense a contract to convey. Under sec-
tion 463 of the same act we claim that if there was any effect
produced as the property by the deed at all, it wholly divested
it, and it cannot be claimed that the escrow did not have any
effect on the status of the property. In ·the absence of these
sections of our statute there would be no question as to the
effect of the escrow on the property devised — that the will
would be revoked *pro tanto,* and the devisees would not take
it. We hold that the title to the property was wholly divested,
and, if so, the judgment of the District Court was wrong.
(1 Williams on Executors, 241, et seq.; *Moore* v. *Burrows,*
34 Barb. 173; *Adams* v. *Green,* 34 Barb. 176; *Schroeppel*
v. *Hopper,* 40 Barb. 425; *McNaughton* v. *McNaughton,* 41
Barb. 50; *Brush* v. *Brush,* 11 Ohio, 287; *Beck* v. *McGillis,*
9 Barb. 35–49; *Adams* v. *Winne,* 7 Paige, 97; *Pond* v. *Bergh,*
10 Paige, 148; *Vandemark* v. *Vandemark,* 26 Barb. 416–418;
*Brown* v. *Brown,* 16 Barb. 569; 2 Am. Lead. Cas. Hare &
W, [5th ed.], 530–537, et seq.; *Coulson* v. *Holmes,* 5 Sawy.
279; 1 Jarman on Wills [5th ed.], 162; 1 Redfield on Wills,
pp. 340, 341, and notes.) Section 464 of the statute as to
wills has no application to this case, in that the deed —
escrow — was wholly inconsistent with the testamentary disposi-
tion of the property by the will, and was a revocation thereof
as to this property. There was such an alteration in the con-
dition of the estate so inconsistent with the provisions of the
will as to be a revocation. As to the question presented for the
election of the widow, we hold that the ruling of the court was
wrong on that. The doctrine of election cannot be invoked
in this case. (§ 1, Leading Cases in the American Law of Real
Property, 359, and cases cited.) In the absence of a statute
providing otherwise, the intent must be clear. (*Clark* v. *Griffith,*
4 Iowa, 405; *Higginbotham* v. *Cornwell,* 8 Gratt. 83; 56 Am.
Dec. 130; *Smith* v. *Kniskern,* 4 Johns. Ch. 9; *Sanford* v. *Jack-
son,* 10 Paige, 266; *Douglas* v. *Feay,* 1 W. Va. 26; *Kelly* v.
*Stinson,* 8 Blackf. 387; *Alling* v. *Chatfield,* 42 Conn. 276;

*Gordon* v. *Stevens,* 2 Hill Ch. 46; 27 Am. Dec. 445.) The
duty to elect must be expressed in the will. (*Perry* v. *Perryman,*
19 Mo. 469; *Bryant* v. *McCune,* 49 Mo. 546; *Booth* v. *Stebbins,*
47 Miss. 161; *Blunt* v. *Gee,* 5 Call, 481.) If the provisions
in the will are inconsistent with dower, then an election may
be compelled. (*McCullough* v. *Allen,* 3 Yates, 10; *Kennedy* v.
*Nedrow,* 1 Dall. 415.) The provisions in the will are not to be
held in lieu of dower unless the bequest is so repugnant to the
claim of dower that the two cannot stand together. (*Tobias*
v. *Ketchum,* 32 N. Y. 319; *Lewis* v. *Smith,* 9 N. Y. 502;
51 Am. Rep. 706; *Bull* v. *Church,* 5 Hill, 206; *Jackson* v.
*Churchill,* 7 Cowen, 287; 17 Am. Dec. 514; *Savage* v. *Burn-*
*ham,* 17 N. Y. 562; *Lasher* v. *Lasher,* 13 Barb. 106; *Tooke* v.
*Hardeman,* 7 Ga. 20; *Fuller* v. *Yates,* 8 Paige, 325; *Adsit* v.
*Adsit,* 2 Johns. Ch. 448; 7 Am. Dec. 539; *Sample* v. *Sample,*
2 Yates, 433, 489; *Havens* v. *Havens,* 1 Sand. Ch. 324; *Sanford*
v. *Jackson,* 10 Paige, 266; *Corriell* v. *Ham,* 2 Iowa, 552; *Stewart*
v. *Stewart,* 31 N. J. Eq. 398; *Cain* v. *Cain,* 23 Iowa, 31; 2
Redfield on Wills, 352, 353, 354, 355, et seq., and notes 11 and
16.) There is no election under a will when its provisions and
dower can take effect together. (*Herbert* v. *Wren,* 7 Cranch,
370; *Baxter* v. *Bowyer,* 19 Ohio St. 490.) The facts in this
case do not constitute an election. (*Price* v. *Woodward,* 43
Mo. 247; *Anderson's Appeal,* 36 Pa. St. 476; *Bradfords* v.
*Kents,* 43 Pa. St. 474; *Millikin* v. *Welliver,* 37 Ohio St. 460.)
The Probate Practice Act of Montana provides that "upon
the death of the husband, one half of the community property
goes to the surviving wife and the other half is subject to the
testamentary disposition of the husband. (§ 551, second div.
Comp. Stats. Mont.) The statutes having referred to commu-
nity property, and provided for its distribution, it is the duty of
the court to give effect to the provision—to give some meaning
to the words that are employed, if it can be done. While our
statute does not expressly determine what shall be community
property, it mentions and disposes of it. When we go to the
statutes where community property is defined, we find that it
includes the profits of all the effects of which the husband has
the administration and enjoyment, either of right or in fact, of
the proceeds of the reciprocal industry and labor of both hus-

band and wife, and estates which they may acquire during the
marriage, either by donations made jointly with them both, or
by purchase, or in any other similar way, even although the
purchase be only in the name of one of the two and not of
both. (3 Am. & Eng. Encycl. of Law, 350; *Cooke* v. *Bremond*,
27 Tex. 457; 86 Am. Dec. 626, and authorities there cited.)

*Hedges & Miller*, and *Carpenter, Buck & Hunt*, for Respondents.

The money paid for mining property described in the deed
should pass to the beneficiaries named in the will, who would
have been entitled to the said property if the money had not
been paid. There was an agreement between testator and
Broadwater that a sale should be made if Broadwater elected to
buy. The deed was deposited in escrow as a convenient method
for carrying the agreement into effect. Until Broadwater indi-
cated his election to purchase, by depositing the money, title,
and seisin, every right to the property, excepting only Broad-
water's right to prospect for a limited time, remained in the tes-
tator and his devisees. A deed, however, will not be permitted
to take effect by relation to the injury of rights of third parties;
surely not when the rights given by a will are confirmed by
statute. (*Jackson* v. *Bard*, 4 Johns. 234; 4 Am. Dec. 267;
*Jackson* v. *Bull*, 1 Johns. Cas. 90; *Hathaway* v. *Payne*, 34
N. Y. 92; *Ruggles* v. *Lawson*, 13 Johns. 285; 7 Am. Dec. 375;
*Shirley* v. *Ayers*, 14 Ohio, 307; 45 Am. Dec. 546.) Prior to
1830 it was the universal rule that if after the devise of real
estate the testator contracted to sell the same, such contract
wrought a revocation of the devise, and a conversion of the real
into personal property, for the purpose of distribution. In
1830 the harshness of this rule was obviated in New York
by an enactment (2 N. Y. Rev. Stats. p. 64, § 45) similar in
substance to the provisions of section 461 of the Probate Prac-
tice Act of Montana. This statute changed in New York the
rule as to the equitable conversion of the subject of the devise
by a covenant or agreement to sell the same. (*Adams* v. *Winne*,
7 Paige, 101; *Vandemark* v. *Vandemark*, 26 Barb. 416; *Lang-
don* v. *Astor*, 16 N. Y. 9; *Beck* v. *McGillis*, 9 Barb. 53; 4
Kent [marg. p.], 532, 533; *Knight* v. *Weatherwax*, 7 Paige,

184.) Sections 462, 463, and 464, at page 384 of the Compiled Statutes of Montana, are the same as sections 46, 47, and 48 of 2 Revised Statutes of New York, page 64, and these sections dispose of the whole doctrine of implied revocation. (*Delafield* v. *Parish*, 25 N. Y. 9, 99; 2 Redfield's Surrogate Reports, 460.) The decision in *Knight* v. *Weatherwax* was made after a full consideration of section 48 of the New York Revised Statutes, which is substantially the same as said section 464, Compiled Statutes of Montana. The statute was adopted in Montana with the meaning which had been given to it in New York. The contract to sell the mining property is not inconsistent with the terms and nature of the testamentary disposition thereof. The only case where the alteration of a testator's interest in real property has been held to be a revocation of a previous devise, is where the testator actually conveyed the property during his lifetime, and took back a bond and mortgage in payment therefor. This was deemed to be a complete change and divestment during the lifetime of the testator, and inconsistent with the terms of the devise. (*Brown* v. *Brown*, 16 Barb. 572; *Adams* v. *Winne*, 7 Paige, 97; *Beck* v. *McGillis*, 9 Barb. 55.) To produce a full revocation his property must be wholly divested. (*Matter of Dowd*, 58 How. Pr. 109.)

The widow, Norma D. Chadwick, has no dower interest in the testator's estate. The " act concerning dower," passed in Montana in 1876, was in force at the time of the testator's death. (See Laws of 1876, p. 63.) It has never been expressly repealed. It has not been repealed by implication so far as the statutes of Montana have any effect: (1) Because no act inconsistent with, or repugnant to it, has been subsequently passed. (2) Because no part of said act is embraced or contained in a subsequent codification or compilation of the Montana statutes. (See Repeal Provisions of Rev. Stats. 1879, p. 671; Repeal Provisions of Comp. Stats. 1887, p. 1235.) These repeal provisions are a copy of the United States repeal provisions (see U. S. Rev. Stats. § 5596), and have been construed in the following cases, to wit: *United States* v. *Bowen*, 100 U. S. 513; *Arthur* v. *Dodge*, 101 U. S. 36; *Cambria Iron Co.* v. *Ashburn*, 118 U. S. 57. By section 7 of said act the widow takes the devise in lieu of dower, unless within a year she files in the Probate Court a

written renunciation of the devise. She now claims the devise, and has never renounced it, and therefore the defendant, Norma D. Chadwick, has no right to dower. There is no such thing as "community property" under the laws of Montana. Community property is defined neither by the common law nor by any Montana statute, and is simply referred to in sections 120, 140, 549, 550, and 551 of the Probate Practice Act. The sections of the Montana statutes in which the words "community property" occur are somewhat similar to certain sections concerning community property in the California statutes, and through carelessness crept into our statutes when parts of the California "act defining the rights of husband and wife" and parts of the Probate Act of California were brought to Montana. The Montana legislature having failed to declare what "community property" is, or to provide for its creation or existence, the court may not supply omissions in the statutes. (Endlich on Statutes, §§ 19, 22; *Holmes* v. *Service*, 80 Eng. Com. Law Rep. 293; *Chaffee's Appeal*, 56 Mich. 244.) Nor may a conjectural meaning be given by the court. (*Commonw.* v. *Bank of Pennsylvania*, 3 Watts & S. 173, 177; *State* v. *Partlow*, 91 N. C. 550; 49 Am. Rep. 652; *Ward* v. *Ward*, 37 Tex. 389; *McConvill* v. *Mayor etc. Jersey City*, 39 N. J. L. 38; Endlich on Statutes, § 24.)

HARWOOD, J.—In this action there is no controversy as to the facts. The questions involved which demand our consideration relate to the construction of a will, and the proper distribution to the devisees thereunder, according to the terms of the will and the law governing. In September, 1885, Walter F. Chadwick died in the city of Helena, in Montana Territory, where he had long been a resident. The deceased left a last will and testament, bearing date April 6, 1882, whereby he appointed the appellants, Benjamin H. Tatem, John C. Curtin, and William C. Bailey, executors thereof. This will was duly admitted to probate, and the executors entered upon the duties of its execution. By the terms of his will the testator devised to his wife, Norma D. Chadwick, all of the personal estate of testator after paying his debts, and an undivided two thirds of all real estate of which the testator died seised, excepting there-

from "all mining property, either quartz leads or lodes, or placer ground, or fire-clay lands, with water rights and mill sites." Of the said mining property, quartz leads or lodes, placer ground, fire-clay lands, together with water rights and mill sites, the testator devised to his said wife one undivided half, and the other half thereof he devised to the respondents, to be distributed to them in share and share alike. After the execution of said will, and on the twentieth day of January, A. D. 1885, the testator, and his wife, Norma D., joining with him, made and executed a deed of conveyance of certain mining property described therein, then, and at the time of making said will, owned by the testator, to one Charles A. Broadwater, grantee. The consideration named in said deed was $37,500. At the time of executing said deed a certain contract or memoranda referring to the same was made and signed and acknowledged by said Walter F. Chadwick and his wife, Norma D., and said Charles A. Broadwater, which provides as follows: "The enclosed deed of the following described property, viz. [here follows a description of the property set forth in the deed]; also a contract for the conveyance of the Sixty-ninth lode, and another contract for the conveyance of the Little Sampson lode—all of said property being more particularly described in said deed —is hereby placed in escrow in the Montana National Bank. If Charles A. Broadwater shall place to the credit of Walter F. Chadwick, to the credit of his heirs, administrators, or assigns, the full sum of $33,750 on or before the first day of September, A. D. 1885, then and in that case the Montana National Bank is authorized to deliver the enclosed deed to Charles A. Broadwater or his order. In case the said Charles A. Broadwater shall not place, or cause to be placed, to the credit of said Walter F. Chadwick, his heirs, administrators, or assigns, the sum of $33,750 in said Montana National Bank on or before the first day of September, A. D. 1885, the bank is hereby authorized to deliver the said deed to Walter F. Chadwick or his order, his heirs or assigns. It is further agreed that no ore excavated by said Broadwater on or from said premises between the date hereof and the said first day of September, or until the payment of the sum above specified, shall be removed from the dump of said property; and that, in case of failure to

pay said sum at the time specified, the same, and all moneys paid by the said Broadwater to said Chadwick, shall become forfeited, and said Chadwick may retain the same as liquidated damages; and said second party shall not create any liens on said property. It is further agreed that said Chadwick will clear the said premises of and from any and all encumbrance, if any there be, now existing and of record, done, caused, or suffered by him."

Another contract was made at the same time, and in reference to the same transaction, signed by the testator, Walter F. Chadwick, and said Charles A. Broadwater, which provides as follows: "That said parties of the first part [Chadwick and wife], for and in consideration of the sum of $33,750 to them in hand paid by the second party, the receipt whereof is hereby acknowledged, and for certain other considerations mentioned and expressed in an escrow agreement deposited with a certain deed of conveyance in the Montana National Bank of Helena, of the following described property, situate in Ten-Mile unorganized mining district, in the county and Territory aforesaid, viz. [here follows a description of the property described in the deed]; all of which property and premises are particularly described in said deed, which bears even date herewith, the same having been as aforesaid executed by said first parties to said Broadwater, and which said deed is to become effective on the compliance with the conditions expressed in said escrow agreement by said second party. Now, therefore, the said first parties hereby agree to and with said second party that, upon compliance with and the fulfillment of the conditions named and expressed in said escrow agreement to be done and performed by said second party, the said deed so deposited shall be delivered to said second party, and the title to said property and the premises therein described shall be and become absolute in said second party, his heirs, etc., according to the covenants and provisions in said deed contained."

The said deed and contracts were placed by the parties thereto in the custody of the said Montana National Bank, to be disposed of according to the conditions set forth in said contracts. The transaction and the papers remained in this condition until near the time for the fulfillment or forfeiture on the part of Broadwater, when, on the 18th of August, 1885, said Walter F.

Chadwick and Broadwater entered into a third agreement in writing respecting the transaction. The effect of this third agreement was to reduce the sum to be paid on the final taking up of said deed by Broadwater from the sum of $33,750 to the sum of $22,500, and to extend the time within which Broadwater might pay said last-mentioned sum from the first day of September, 1885, to the first day of January, 1886. While the transaction remained in this state, and on the twenty-eighth day of September, 1885, the said Walter F. Chadwick died, leaving his last will and testament, with the provisions aforesaid; and thereafter, on the thirty-first day of December, A. D. 1885, the said Broadwater deposited in the said Montana National Bank, and paid to said executors the said sum of $22,500, in fulfillment of the conditions of said transaction on his part; and thereupon said bank delivered to said Broadwater said deed. Now a contention has arisen between the executors and Norma D. Chadwick, the appellants, on the one side, and the other devisees, respondents, on the other, as to the proper distribution of said sum of money arising from said sale of mining property, under said will. The appellants claim that this entire fund should go to the widow, Norma D., under the provisions of the will giving her the personal property; while the respondents contend that this fund should be distributed as provided under the will for the division and distribution of said mining property, of which they claim the testator died the owner; that is, one half thereof to the widow, Norma D., and the other half thereof to the other devisees in equal shares.

In the absence of statutory provisions the solution of this question would be attended with much difficulty. There are, however, statutory provisions which have a bearing upon this contention, and these provisions command the first consideration by the court. The statute of this State in reference to the execution and revocation of wills, at sections 461 and 463, Probate Practice Act, provides as follows: "Sec. 461. An agreement made by a testator for the sale or transfer of property disposed of by a will previously made does not revoke such disposal, but the property passes by the will, subject to the same remedies on the testator's agreement for a specific performance, or otherwise, against the devisees or legatees, as might be had against the tes-

tator's successors, if the same had passed by succession." "Sec.
463. A conveyance, settlement, or other act of a testator by
which his interest in a thing previously disposed of by his will is
altered, but not wholly divested, is not a revocation, but the will
passes the property which would otherwise devolve by succes-
sion." If the transaction between the testator and Broadwater
only amounted to an agreement for the sale or transfer of the said
mining property, then the position taken by appellants cannot
be sustained. Again, if the transaction in question amounted,
in the language of the statute, to "a conveyance, settlement, or
other act of the testator, by which his interest in the thing previ-
ously disposed of by his will is altered, but not wholly divested,"
the position taken cannot be sustained.

The question is, did the transaction amount to a complete
divestiture of the title by the testator? We think not. Where
was the title to this property while Broadwater had the option
to purchase? Can it be said it was vested in Broadwater? The
deed lay as a dormant instrument in the custody of the bank,
without efficacy as a conveyance, until a certain condition was
performed by Broadwater, and a delivery of the deed was made
to him by the bank. The conditions were such that, if Broad-
water did nothing, the title remained in the testator, and passed
by his will to the devisees; but, if he performed the conditions,
that is, paid the sum of $22,500 within a certain time, and
obtained from the bank a delivery of the deed, then the title
thereby passed to him. It is frequently asserted by the decis-
ions of courts, and by eminent authorities, going back as far as
Lord Coke, that the general rule is that an instrument delivered
in escrow takes effect only on the performance of the conditions
and the second delivery, and is not operative until the conditions
are performed and the second delivery is made. This doctrine
is decisive of the question under consideration. If the deed is
inoperative until the performance of the conditions, it follows
that the estate is "not wholly divested," and passes by the terms
of the will.

In answer to this line of reasoning, counsel for appellants
invoke the aid of authorities where it is held that to prevent
injustice, or to prevent the defeat of the plain intention of the
parties, courts of equity will allow the second delivery of the

escrow to take effect by relation from the time of the first delivery. Let this be granted, and does not the proposition carry with it the conclusion that the act which consummates the divestiture is the performance of the condition and the second delivery? And this second delivery may be given so great a force as to be allowed to relate back in its effect to the first. But this doctrine of relation, which in some of the decisions is called a "fiction," is the exception to the rule applying to escrow instruments, and not the general rule.

It is contended, also, by appellants, that if the title remained in the testator until the conditions were performed and the second delivery was made, the testator having died some months before the second delivery, the effect is that the title remained in the deceased until the condition was performed, and then passed from him to Broadwater, which is not consonant with reason, or with the rules of law; that if the testator died seised of said mining property, September 28, 1885, and the title did not pass to Broadwater until the second delivery, December 31, 1885, the title passed from the deceased on the latter date, which could not be, as the title could not remain in the deceased during the period from September 28 to December 31, 1885, and then pass from him to Broadwater. Hence the title had to pass, if at all, from the first delivery. This position will not stand the test of legal rules and reason. When the testator died, his will became operative, and by virtue of the will and the law the title passed to the devisees, subject to such conditions as the testator had placed upon it in his transaction with Broadwater. (Comp. Stats. [Prob. Prac. Act] §§ 461, 463.) The testator had not only made a will touching the property in question, but he had placed other conditions upon it, by virtue of which it might or might not pass away from him or his devisees. The law joins these two provisions together, and provides that both shall have effect upon the property. The will passes the property to the devisees, subject to the conditions. The conditions being fulfilled, the act of the testator carries the title away from the devisees to another. This conforms to the statute quoted *supra*. These provisions were evidently enacted to change a rule of long standing, by which, if real property be devised, and after the execution of the will, the testator makes a contract to sell the

same; this was construed as a revocation of the will as to such property, and the further rule that such a transaction wrought a conversion of such property from real to personal estate. We are of opinion that the case at bar is controlled by the statute. Chancellor Walworth, in the case of *Knight* v. *Weatherwax,* 7 Paige, 182, places this construction upon a similar statute existing in New York. He had to view the same question here under consideration, and he says: "Whether the two lots were to be considered as real or personal estate after the making of the agreement to sell the same, the interest of the testatrix therein passes to the objects of her bounty, as specified in the first clause of her will, in the same manner as if that agreement had not been made; subject to the complainant's right to a specific performance of the contract, upon payment of the purchase money and interest, according to the terms of his agreement."

We will now consider the two remaining questions brought up for our determination by this appeal. *First.* The appellants claim that said " Norma D. Chadwick is entitled, in addition to the legacies and bequests in her behalf contained in said will, to a dower interest of, in, and to all lands and real property of which the said Walter F. Chadwick died seised, which dower interest should first be carved out of said real estate, prior to the distribution thereof to the devisees in said will." *Second.* That all property mentioned in the said will was at the death of the testator "community property," and by reason thereof said wife, Norma D., was entitled to one half of all of said property, in addition to the property devised to her by said will. Here are two claims put forth, predicated upon the proposition that, under the law as it then existed, the widow is entitled to dower, and in addition thereto is entitled to one half of what is termed " community property."

Proceeding in the order stated, first as to dower. In 1876 (Laws 9th Sess. p. 63) the legislative assembly of Montana passed an "act concerning dower," which provided what interest in the lands of the husband the wife should be endowed of; when dower should attach; the manner by which it could be claimed and enforced, or relinquished, or superseded by other benefits; and, in general, the act covered and controlled the subject of dower. While it is not directly disputed that this act

has continued in force since its adoption, still this point is brought to the attention of the court, and should be determined. It does not appear that said act concerning dower has ever been expressly repealed; but the question arises as to whether it has been repealed by implication; and this arises from the fact that two general compilations of the statutes of Montana have been made since the passage of said act, in neither of which has it appeared. The first compilation of 1879, known as the "Revised Statutes of Montana," does not incorporate said "act concerning dower." We must now examine and determine whether the repealing clause embodied in section B, chapter lxx. of the Revised Statutes, repealed the "Dower Act." Section B is as follows: "All acts of the legislative assembly passed prior to said twenty-first day of February, 1879, or on said day, any portion of which is embraced in any section of said codification, are hereby repealed, and the section applicable thereto shall be in force in lieu thereof; all parts of such acts not contained in such codification having been repealed or superseded by subsequent acts, or not being general and permanent in their nature; *provided*, that the incorporation into said codification of any general and permanent provision taken from an act making appropriations, or from an act containing other provisions of a private, local, or temporary character, shall not repeal, or in any way affect, any appropriation, or any provision of a private, local, or temporary character, contained in any of said acts, but the same shall remain in force; and all acts of the legislative assembly passed prior to or on said last-named day, no part of which are embraced in said codification, shall not be affected or changed by its enactment." Proceeding to the Compiled Statutes of 1887, we find the repealing section (2072, ch. cxxiv.) is *verbatim* with that of the Revised Statutes of 1879, except the change in date. It is unnecessary, however, to consider the latter compilation, except by way of illustration of this subject, for two reasons: *First.* All the facts involved in this consideration arose prior to 1887. *Secondly.* In 1887 Congress passed an act providing for dower to the widow in this and other Territories; thereby placing the question beyond repeal by our legislative assembly while we remained in a territorial condition. Act of Congress entitled "An act to amend an act entitled 'An act to amend section 5352

of the Revised Statutes of the United States, in reference to bigamy, and for other purposes;' approved March 22, 1882." (24 Stats. at Large, 635.)

The question, then, is, did the repealing clause in the Revised Statutes of Montana of 1879 repeal the "act concerning dower," approved February 11, 1876, *supra?* The terms of such repealing clause, when carefully considered, are very clear, and show exactly what was intended to be repealed. "All acts of the legislative assembly passed prior to the twenty-first day of February, 1879, or on said day, any portion of which is embraced in any section of said codification, are hereby repealed, and the section applicable thereto shall be in force in lieu thereof." So far, the repealing clause has not touched the "act concerning dower." The subsequent portion of that clause, down to the proviso, is explanatory of what went before, in these words: "All parts of such acts not contained in such codification having been repealed or superseded by subsequent acts, or not being general and permanent in their nature." A proviso is here inserted in the section, which does not affect said "act concerning dower"; and the section closes as follows: "And all acts of the legislative assembly passed prior to or on said last-named day, no part of which are embraced in said codification, shall not be affected or changed by its enactment." It is clear that no part of the " act concerning dower" is embraced in said codification; and therefore we think it follows, without doubt, that said act is not repealed, but has stood in full force, although from some cause it was not incorporated in said codification. We have nothing upon which to base even an inference that it was the intention of the legislature to repeal this "act concerning dower." It was the law in full force when said codification was made, and the subject of dower is entirely wanting in the compilation of 1879. Repeals by implication are not favored by the law, and the strong leaning of the courts is against the doctrine. (Potter's Dwarris on Statutes, 154–160, and cases there cited.)

Sections 6 and 7 of said "act concerning dower" are decisive against the position that said Norma D. is entitled to dower in addition to the devise and bequests under the will. Said sections provide as follows: "Sec. 6. Every devise of land, or

any estate therein, by will, shall bar her dower in lands, or of her share in personal estate, unless otherwise expressed in the will; but she may elect whether she will take such devise or bequest, or whether she will renounce the benefit of such devise or bequest, and take her dower in the lands, and her share in the personal estate. Sec. 7. When a woman shall be entitled to an election under this act, she shall be deemed to have taken such ‚devise, unless within one year after the authentication or probate of the will she shall deliver or transmit to the court of probate of the proper county a written renunciation, which may be in the following form, to wit: ‘I, A. B., widow of C. D., late of the county of ———, Territory of Montana, do hereby renounce and quit all claims to the benefit of any bequest or devise made to me by the late will and testament of my said deceased husband, which has been exhibited and proved according to law (or otherwise, as the case may be); and I do elect to take, in lieu thereof, my dower or legal share of the estate of my said husband;’ which said letter of renunciation shall be filed in the office of the probate judge, and shall operate as a complete bar against any claim which such widow may afterwards set up to any provision which may have been thus made for her in the will of any testator, in lieu of dower; and by thus renouncing all claims, as aforesaid, such widow shall thereupon be entitled to dower in the lands, or share in the personal estate, of her husband.” It appearing by the record that the widow, Norma D., has not renounced her rights under the will, but, on the contrary, has taken thereunder, she is barred from now claiming dower.

Upon the question of “community property,” we find no difficulty in determining the rights of the appellant, Norma D. Chadwick, under the facts presented in this case. The provision relied upon by the appellants is found in section 551, Probate Practice Act, as follows: “Upon the death of the husband one half of the community property goes to the surviving wife, and the other half is subject to the testamentary disposition of the husband, and, in the absence of such disposition, goes to his descendants equally, if such descendants are in the same degree of kindred to the decedent; otherwise, according to the right of representation.” It is claimed by appellants that the whole

estate which the testator devised and bequeathed was "community property." While we do not here decide or imply that the appellants' position as to what is "community property" is correct, it would appear that, if appellants' position is conceded for the purpose of this discussion, it would not change the rights of the widow, Norma D., as she has, by virtue of the will, more than one half of the whole estate. We nowhere find provisions that would entitle the widow to one half by virtue of the statute and any part of the other half, which is otherwise disposed of by will. The statute implies the contrary by declaring that the "other half is subject to the testamentary disposition of the husband," *supra.* We are clearly of the opinion that the few, vague, and indefinite allusions of the Probate Practice Act in reference to community property do not apply to the case at bar in such a way as to change the rights of the devisees under the will in question. We therefore do not feel called upon, in this action, to trace the question further, to determine what application these few statutory references to community property might have to other cases. This species of property right, called "community property," is certainly not indigenous to this jurisdiction; and, as an exotic, it has not been transplanted with sufficient root to develop a form having definite attributes or symmetrical proportions. The judgment of the court below is affirmed, with costs.

BLAKE, C. J., and DE WITT, J., concur.