[No. 31901.   Department One.   May 1, 1952.]

WASHINGTON ESCROW COMPANY, INC., *Plaintiff*, v. SOLITA
BLAIR, *Appellant*, ANTHONY McKINNON, *Indi-
vidually and as Executor, Respondent.*[1]

[1]Reported in 243 P. (2d) 1044.

*Nelson R. Anderson,* for appellant.

*Edwards E. Merges,* for respondent.

WEAVER, J.—When a testator dies after having contracted to sell property previously devised, and the purchase money is paid and the deed withdrawn from escrow after the testator's death, is the devisee, under our statute, ultimately entitled to the purchase money held by the escrow holder, subject to administration of the estate?

November 23, 1948, Robert W. McKinnon executed his will devising specific property to Solita Blair. He named his son, Anthony, residuary legatee and devisee and appointed him executor.

In June, 1950, testator contracted to sell, and J. E. Mallonee agreed to buy, the property previously devised. The purchase money receipt and escrow instructions disclose the sale was subject to the seller furnishing evidence of

insurable title. It was also subject to the purchaser being able to secure an F. H. A. mortgage upon the property for eighty-two hundred dollars, and payment of the balance of the purchase price. A warranty deed, the purchase money receipt, and the escrow instructions were deposited with the Washington Escrow Company.

Robert W. McKinnon died July 9, 1950. In August, 1950, the purchaser paid the balance of the purchase price to the escrow holder, which then recorded the deed to the purchaser.

Conflicting demands having been made upon the escrow company for the funds in its possession, it commenced this action of interpleader, making Solita Blair and Anthony McKinnon, *individually* and as executor of his father's will, parties defendant. In her answer and cross-complaint, Solita Blair set up her interest in the fund as a devisee. Anthony McKinnon did likewise, both as *an individual* and as executor.

At the close of the testimony produced by defendant Blair, the trial court granted a motion to dismiss her cross-complaint, with prejudice, and ordered that "*defendants*, McKinnon [he appeared individually and as executor], are entitled to all monies paid into the court by the plaintiff . . . ." Solita Blair has appealed.

Respondent McKinnon urges that, because he is the executor of his father's will, he is, as executor, under the provisions of RCW 11.48.020 (Rem. Rev. Stat., § 1464), entitled to possession of the fund *during administration of the estate*. With this we agree; but we do not agree, as respondent urges, that we cannot, in this proceeding, determine the ultimate disposition of the fund upon settlement of the estate. This is not the situation which confronted us in *In re Bridge's Estate, ante* p. 133, 241 P. (2d) 439, where all necessary parties were not before the court.

In an interpleader action, RCW 4.08.180 (Rem. Rev. Stat., § 201) authorizes a defendant to set up any claim he has to the fund, to the end that the superior right thereto shall prevail. This, appellant has done. All parties

interested in the fund are before the court. To require appellant to litigate the question of her ultimate right to the fund at some future time in an action against the executor, would result in a multiplicity of suits. RCW 4.08.130 (Rem. Rev. Stat., § 196), which reads:

"The court may determine any controversy between parties before it when that can be done without prejudice to the rights of others, . . ."

was expressly designed to prevent this. Appellant's claim to the fund, under the circumstances here, is not premature, and we will, therefore, determine title to the fund upon final settlement of the estate.

The question presented is the issue of revocation *vel non.* RCW 11.12.060 (Rem. Rev. Stat., § 1400) reads:

"A bond, covenant, or agreement made for a valuable consideration by a testator to convey any property, devised or bequeathed in any *last* will previously made, shall not be deemed a revocation of such previous devise or bequest [*], but such property shall pass by the devise or bequest, subject to the same remedies on the bond, covenant, or agreement, for specific performance or otherwise, against devisees or legatees, as might be had by law against the heirs of the testator or his next of kin, if the same had descended to them." (Italics ours.)

The statute has had a long but quiet history in this state. It was first adopted by the territorial legislature in 1854 (Laws of 1854, p. 314, § 9), exactly as above quoted, except for the insertion of the phrase "either in law or equity" at the asterisk, the phrase being dropped in the Code of 1881, § 1323. It has been cited but once by this court (*In re McNulta's Estate,* 168 Wash. 397, 12 P. (2d) 389), but upon an issue not here presented.

This statute, as originally adopted by our legislature, appears in its identical form (with one minor exception) in II Rev. Stat. of New York, Ch. VI, Title I, Art. 3, § 45 (1836). The New York statute did not, however, contain the word "last," as italicized above. The statute also appeared in II Rev. Stat. of New York (4th ed.), Ch. VI, Title I, Art. 3, § 38, published in 1852. This was the code of New York

current in 1854 when our territorial legislature adopted the statute.

■ When our legislature adopted it, it is presumed to have adopted the construction theretofore placed upon the statute by the courts of New York. *In re North River Logging Co.,* 15 Wn. (2d) 204, 130 P. (2d) 64.

The New York court first considered the statute in 1838 in the case of *Knight v. Weatherwax,* 7 Paige (N. Y.) 182. The testatrix willed specific property. She sold her interest therein and died before any part of the purchase price had been paid. In holding that the devisees took under the will, the chancellor said:

"By the express provisions of the revised statutes, a bond, agreement or covenant to convey property devised or bequeathed by a previous will is not to be deemed a revocation of the will, either at law or in equity; but such property is to pass by the devise or bequest, subject to the right of the purchaser to a specific performance. (2 *R.S.* 64, § 45.) Whether the two lots were to be considered as real or personal estate after the making of the agreement to sell the same, the interest of the testatrix therein passes to the objects of her bounty, as specified in the first clause of her will, *in the same manner as if that agreement had not been made;* subject to the complainant's right to a specific performance of the contract, upon payment of the purchase money and interest, according to the terms of his agreement, for the benefit of whoever may be entitled to the same under that clause of the will." (Italics ours.) (p. 184)

■■ Title vested in Solita Blair immediately on testator's death, subject to the burden of administration. RCW 11.04.250 (Rem. Rev. Stat., § 1366).

Under like or similar statutes, courts have almost uniformly held that a devise is not revoked by a subsequent executory contract of sale or an agreement to sell, and that, if there is no conveyance prior to death, the devisee is entitled to the purchase money unpaid at the time of the testator's death. *Powell's Distributees v. Powell's Legatees,* 30 Ala. 697; *Welsh v. Pounders,* 36 Ala. 668; *Slaughter v. Stephens,* 81 Ala. 418, 2 So. 145; *Scarborough v. Scarborough,* 176 Ala. 141, 57 So. 820; *In re Erskine's Estate,* 84

Cal. App. (2d) 323, 190 P. (2d) 659; *Chadwick v. Tatem,* 9
Mont. 354, 23 Pac. 729; *Nutzhorn v. Sittig,* 70 N. Y. S. 287, 34
Misc. 486; *Van Tassel v. Burger,* 119 App. Div. 509, 104
N. Y. S. 273.

■■ Respondent argues that the sale here was a "com-
pleted transaction" because the testator had placed the deed
in escrow. With this we cannot agree. After the escrow
was established, three contingencies were yet present:
Could the seller produce evidence of insurable title? Could
the purchaser secure an F. H. A. loan for eighty-two hun-
dred dollars upon the property? Would the purchaser pay
the balance of the purchase price? The inability or refusal
of either party to perform might have resulted in the ter-
mination of the escrow.

If the transaction between the testator and Mr. Mallonee
amounted to "a bond, covenant, or agreement made for a
valuable consideration by a testator to convey any prop-
erty," then the position urged by respondent cannot be sus-
tained.

The question is, did the transaction amount to a complete
divestiture of title by the testator? We think not. Where
was the title to the property until Mr. Mallonee paid the
balance of the purchase price?

In *Chadwick v. Tatem, supra,* the property had been de-
vised and then sold by the testator. The deed was placed
in escrow to be held until the balance of the purchase price
was paid. The testator died before the terms of the escrow
had been completed. The argument was made that the tes-
tator had been divested of title when the deed was placed
in escrow. This contention was rejected. The court said:

" . . . The deed lay as a dormant instrument in the
custody of the bank, without efficacy as a conveyance,
until a certain condition was performed by Broadwater,
and a delivery of the deed was made to him by the bank.
. . . It is frequently asserted by the decisions of courts,
and by eminent authorities, going back as far as Lord Coke,
that the general rule is that an instrument delivered in
escrow takes effect only on the performance of the condi-
tions and the second delivery, and is not operative until the
conditions are performed and the second delivery is made.

This doctrine is decisive of the question under consideration. If the deed is inoperative until the performance of the conditions, it follows that the estate is 'not wholly divested,' and passes by the terms of the will."

*Van Tassel v. Burger, supra,* further illustrates the point that no title had passed prior to testator's death, and that title did, in fact, pass on testator's death to the devisee, subject to the contract of sale. The deed was placed in escrow with instructions to deliver it to the grantee upon payment of the balance of the purchase price. The testator died at 7 a. m. the next morning. Four hours later, the purchaser paid the balance of the purchase price and received his deed. The court said:

"Where a deed is delivered as an escrow nothing passes by the deed unless and until the condition of its delivery is performed . . . During the four hours between the death of the testatrix and the delivery by the depository, the legal title of the premises in question was in the defendant Baynes [devisee]."

We cannot escape the conclusion that testator had not been divested of title at the time of his death, and that the transaction was "an agreement made for a valuable consideration by a testator to convey" specific property previously devised. Thus, it falls under the operation of RCW 11.12.060 (Rem. Rev. Stat., § 1400).

When a deed is deposited in escrow, and the grantor dies prior to a delivery of the deed by the escrow holder, we have held, where justice requires it, that, by a legal fiction, the title of the grantee "relates back" to the time of the original delivery of the deed in escrow. *Bronx Investment Co. v. National Bank of Commerce,* 47 Wash. 566, 92 Pac. 380; see anno., 117 A. L. R. 69.

It is respondent's contention that the doctrine should be employed here for his benefit, and that, when it is so employed, Mr. Mallonee's title related back to the time of the delivery in escrow of the deed, which was prior to testator's death, and thus, on his death, no title could descend to the devisee. This same contention was made in the *Van Tassel* and *Chadwick* cases, *supra.* The New York court

stated that, even though the doctrine were to be applied, it could avail its proposer nothing, because the will speaks as of the time of the testator's death, and at that time, title was in fact vested in the testator. The time had not yet come for the application of the doctrine, should it be necessary, because the purchase money was not yet paid. The fiction is, however, usually indulged only to uphold the grantor's deed and to prevent injury to the grantee. Under the circumstances of this case, it is not to be applied for the benefit of a third party.

For these reasons, we hold that respondent, Anthony McKinnon, *individually,* is not entitled to the money interpleaded; that Anthony McKinnon, as executor of the will of Robert W. McKinnon, is entitled to possession of the money interpleaded as an asset of the estate, to be used in the settlement thereof, if necessary, according to law; and that, upon final settlement of the estate, the balance of the interpleaded fund remaining in his possession as executor shall be distributed to appellant, Solita Blair.

The cause is remanded, with directions to modify the judgment and order of dismissal entered July 26, 1951, in a manner consistent with this opinion.

Appellant will recover costs.

SCHWELLENBACH, C. J., MALLERY, GRADY, and DONWORTH, JJ., concur.