# Kraus *v.* Philadelphia.

*Municipalities—Municipal indebtedness—Philadelphia—Statutes —Repeal—Certificate of official.*

1. The legislature may at any time modify or abolish the powers vested by it in the municipalities of the State.

2. Unfinished proceedings of a municipality ordinarily fall with the repeal of the laws under which they were begun.

3. But if the repealing act also substantially reënacts the repealed laws, pending proceedings may be continued, subject to such modifications as the new act provides.

4. Where the legislature declares that it shall be unlawful thereafter for a municipality to do a given thing, it cannot thereafter be done, no matter how far the proceedings leading up thereto had advanced when the act went into effect.

5. Where the certificate of an official is made a condition precedent to the validity of a future act of the municipality, that act cannot thereafter be legally performed, though the prior proceedings, to which the certificate relates had theretofore been legally done.

6. In that event, however, the municipality may, by supplementary ordinances, reënact the prior proceedings upon the giving of the proper certificate.

*Constitutional law—Municipal debt—Delegation of power—Local and special laws—Obligation of contract—Act of June 25, 1919.*

7. Section 8 of Article XVII of the Act of June 25, 1919, is not unconstitutional as a local or special law, nor as violating the obligation of contracts, nor as an unlawful delegation of power, nor as a violation of the amendment to article IX, section 9, relating to incurring indebtedness by the City of Philadelphia.

Argued Oct. 9, 1919. Bill in equity for injunction, Miscellaneous Docket of Supreme Court in Case of Solomon C. Kraus v. City of Philadelphia et al. Before STEWART, MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ.

Final decree not entered or injunction issued, but leave given to plaintiff to apply for same whenever necessary.

*Joseph L. Kun,* for complainant.—In the absence of constitutional restriction or negation, the power of the legislature to prohibit cities from borrowing money or incurring debt for expenditures other than capital expenditures, and to provide what municipal officer shall determine what constitutes a capital expenditure, is clear: Com. v. Moir, 199 Pa. 534; Com. v. M'Closkey, 2 Rawle 369; Scowden's App., 96 Pa. 422.

At the time of the passage of Act No. 274 of the 1919 legislative session, no constitutional provision operated so as to restrict or deny the power of the legislature to prohibit cities of the first class from borrowing money or incurring debt for other than capital expenditures, and to provide who should determine what constitutes capital expenditures: Wheeler v. Philadelphia, 77 Pa. 338; Kilgore v. Magee, 85 Pa. 401; Com. v. Moir, 199 Pa. 534; Scranton v. Whyte, 148 Pa. 419.

By Section 8, of Article XVII, of the Act of June 25, 1919, Act No. 274, the legislative intention is clear to prohibit cities of the first class from borrowing money or incurring bonded indebtedness for expenditures nor capi-

tal expenditures, and to provide who should determine what constituted capital expenditures.

By Section 8, of Article XVII, of the Act of June 25, 1919 (No. 274), the prohibition on borrowing money or incurring debt for expenditures not capital expenditures, and the provision as to who should determine what constituted capital expenditures was intended by the legislature to operate upon that part of the bonded indebtedness authorized by the City of Philadelphia in 1916 and 1919, but not actually incurred: McGuire v. Phila., 245 Pa. 287; Town of Concord v. Portsmouth Savings Bank, 92 U. S. 625; Norton v. Brownsville, 129 U. S. 479; Merchant's Ins. Co. v. City of Newark (N. J.), 23 Atlantic Rep. 305.

*Joseph P. Connelly,* City Solicitor, with him *Joseph G. Magee* and *Ernest Lowengrund,* Assistant City Solicitors, for defendants.—The Act of June 25, 1919, is prospective only: Smith v. Illinois Cent. R. R. Co., 36 Pa. Superior Ct. 584; Brubaker's Est., 59 Pa. Superior Ct. 109; Horn & Brannen Mfg. Co. v. Steelman, 215 Pa. 187; Schuylkill County's App., 38 Pa. 459; Haley v. Phila., 68 Pa. 45; Juniata Township Division, 31 Pa. 301; County of Clay v. Society for Savings, 104 U. S. 579; Davenport Gas Light & Coke Co. v. Davenport, 13 Iowa 229; Com. v. Montrose Borough, 52 Pa. 391; Dewart v. Purdy, 29 Pa. 113; McGuire v. Phila., 245 Pa. 287; Redding v. Esplen Borough, 207 Pa. 248.

The provisions of Section 8 of Article XVII of the Charter Act in many respects are in conflict with the Constitution: Van Loon v. Engle, 171 Pa. 157; McCarthy v. Com., 110 Pa. 243.

Article XVII, section 8 of the charter vests undue and unique powers in the city controller: Com. ex rel. v. Phila., 176 Pa. 588; Com. ex rel. v. George, 148 Pa. 463; Com. ex rel. v. Larkin, 216 Pa. 128; Taggart v. Com., 102 Pa. 354; Perkins v. Phila., 156 Pa. 554; Moll v. Morrow, 253 Pa. 442.

Section 8, of Article XVII, of the Act of 1919, if construed as plaintiff contends would impair the obligation of contracts.

The requirement for presenting to the councils the certificate of the city controller "prior to the authorization of such debt" is but directory: Com. v. Zillafrow, 207 Pa. 274.

*Thos. Raeburn White,* for Geo. Burnham, Jr., et al., intervenors, cited: Keller v. Scranton, 200 Pa. 130; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727; Elliot v. Phila., 229 Pa. 215.

OPINION BY MR. JUSTICE SIMPSON, November 5, 1919:

Because of the magnitude of the interests involved and the pressing need for a speedy decision, we consented, at the request of all the parties, to assume original jurisdiction in this case, and to permit the plaintiff to file a taxpayer's bill against the City of Philadelphia, its mayor, solicitor, controller and treasurer, to enjoin all further proceedings on certain ordinances hereinafter specified. The bill was thereupon filed, certain additional facts agreed upon, and defendants demurred. At the oral argument we were requested by both sides to speed the cause, and to render final decision one way or the other, without granting leave to amend or plead over.

The important facts are as follows: By two ordinances passed and approved April 12, 1916, the city expressed a desire to increase its indebtedness in the sums of $67,-100,000 and $47,425,000, respectively, for purposes which were, so far as the first ordinance is concerned, entirely capital outlay, as defined in the Act of June 25, 1919, hereinafter referred to; but as to the second ordinance, part was for capital outlay and part for current expenses as defined in the act. Both ordinances also provide for obtaining the consent of the electors by a vote to be thereafter taken. The electors having given consent, councils by two later ordinances, passed and ap-

proved June 29, 1916, authorized "the Mayor, City Controller and City Solicitor, or any two of them......to borrow at such times and in such proportions as, in their judgment, the best interests of the city demand," the total amount of said loans for the purposes specified in said ordinances. Under the authority thus given part of the loan authorized by each ordinance has been borrowed, and part not.

On July 11, 1919, the mayor approved an ordinance duly passed, authorizing "the Mayor, City Controller and City Solicitor, or any two of them......to borrow at such times and in such proportions, as in their judgment the best interests of the city demand," the further sum of $12,970,000 for purposes some of which are and some of which are not capital outlay as defined in said act. Under this last ordinance, after due advertisement, the city undertook on August 6, 1919, to sell $2,000,000 of its bonds to certain bankers, but the loan had not been consummated when the bill in this case was filed. Article XVII, Section 8, of the Act of 1919, is quoted in the bill, and interpreted as meaning that no further debt can be incurred except for capital outlay as defined in this statute, and not even then unless upon the certificate of the city controller, given "prior to the authorization of such debt." Plaintiff further averred the city proposed to continue borrowing the balance of the sums specified in said ordinances, whether for capital outlay or not, and this without obtaining the certificate of the city controller, which had never been given as to any of said loans. Wherefore plaintiff alleged no further proceedings could legally be had in regard to said loans, and prayed an injunction thereagainst.

Defendants demurred on a number of grounds, which in their argument they condensed into two propositions: (1) Is said article XVII, section 8, prospective or retrospective? and (2) Is it constitutional? In our consideration of the case we shall also treat the matter substantially under these two heads, but prefer to state the

first a little differently, viz: What effect has article
XVII, section 8, upon the ordinances referred to, so far
as this new legislation relates to those parts of the loans
which have not actually been made?  If we keep in mind,
what was said in Phila. v. Fox, 64 Pa. 169, and Com. v.
Moir, 199 Pa. 534, that a municipality is "merely an
agency instituted by the sovereign for the purpose of
carrying out in detail the objects of government, and
therefore......the legislature......may enlarge or di-
minish its territorial extent or its functions, may change
or modify its internal arrangement or destroy its very
existence" at will, and apply the time-honored rule that
in construing a statute we must consider the old law, the
mischief and the remedy—the questions for consideration
under the first head will not be found as difficult as the
elaborate arguments of counsel would indicate.

Article XVII, section 8, is as follows: "It shall be law-
ful for such city to borrow money or incur debt, in ac-
cordance with the terms of existing law, for the purpose
of acquiring property, erecting buildings, bridges, or
other structures (but not for the repair of the same),
paving streets (but not repaving or repairing the same), or
for any other permanent improvements or capital outlay
of any kind, provided that all of such proposed expendi-
tures are certified to the council by the city controller to
be capital expenditures as distinguished from current ex-
penses, prior to the authorization of such debt.  The cer-
tificate of the city controller shall be final and conclusive
as to the character of the proposed expenditures.  It
shall be unlawful for the city to borrow money or incur
debt for any purposes other than above specified, except
in the case of loans for periods not to exceed one year as
provided in this act: Provided, however, That if during
the preceding year current funds have been used
for which it would have been lawful to borrow money as
herein provided, and the city controller shall so certify,
the current funds may be reimbursed out of loan funds
borrowed for that purpose."

The primary question naturally arising is: Can the city, after the effective date of this provision, viz: after July 25, 1919, borrow money for any purposes other than capital outlay as defined therein? Evidently the evil which the legislature desired to remedy was the habit of borrowing money to pay current expenses, instead of paying them out of the annual taxes, thereby overburdening future years, which will always have their own current expenses to pay, and possibly rendering the city incapable of making future loans for capital expenditures, even if needed to insure the health and safety of its citizens. The evil being great and the purpose to remedy it clear, our duty in construing this provision of the act is equally clear. Happily on this question no room is left for antagonistic construction. The section says: "It shall be unlawful for the city to borrow money or incur debt for any other purposes than above specified," that is, for capital outlay as therein defined. This clause has no relation to "authorization of such debt" or to "the certificate of the city controller." It is a plain, simple inhibition against thereafter borrowing money for current expenses; and hence no ordinance previously passed, which authorized the city officials to borrow in the future, can have any further validity as to loans for current expenses, if they were not actually consummated before this provision of the act went into effect. The sovereign having taken away this much of the power previously given to its agent, the latter must thereafter act strictly within the authority remaining in it.

The next question naturally arising under our present heading is: Where the proposed indebtedness is for capital expenditures, at what stage of the proceedings must the certificate of the city controller be obtained? In determining this, construction is required, but the answer seems clear. The section provides: "It shall be lawful for said city to borrow money or incur debt . . . . . for the purpose of . . . . . . capital outlay of any kind, provided that all such proposed expenditures are certified to the coun-

cil by the city controller to be capital expenditures as distinguished from current expenses, prior to the authorization of such debt." The phrase "authorization of such debt" as therein used, if standing alone, might refer to its authorization by a vote of the electors in cases where such consent is required, since the words are sometimes used in that sense in other portions of the act. It is plain, however, they were not so used in the section under immediate consideration, for, if they were, no certificate would be required for the authorization of a loan not necessary to be submitted to a vote of the electors, whereas it is palpable the legislative intent was to require it in every kind of loan. Moreover, it is only the character of the "proposed expenditures" which is to be certified, and what these will be cannot be known until the passage of the ordinance authorizing the city to "borrow money" for the "proposed expenditures." Even where the consent of the people is required the money may never be borrowed, though that consent has been given. Instances are not rare in which this has been the case.

The reason for requiring the certificate of the city controller and making it conclusive leads to the same result. If it had been intended simply to forbid expenditures other than for capital outlay, a simple statement to that effect is all that would have been required. Doubts, however, might arise, and, as "capital is timid," loans might be difficult to place and the premium obtained small or none. To prevent these results the act prescribes that the certificate of the city controller shall be conclusive that the "proposed expenditures" are for capital outlay; and hence it will be in ample time if given "prior to the authorization of such debt" by the ordinance empowering the city officials to actually make the loan. It has been suggested that, possibly, the purpose of the certificate was to advise the electors whether or not they were voting for an increase of indebtedness for capital outlay. The electors are given that information, however, both in the advertisement of the election and on the ballot

itself, and it is improbable the legislature would have required further advice to them. It follows that the certificate of the controller is required prior only to the ordinance authorizing the city officials to actually borrow the money; and the two ordinances of April 12, 1916, expressing a desire to increase the indebtedness and providing for obtaining the consent of the people, and the vote of the people consenting thereto, not being within the mischief sought to be remedied by the Act of 1919, are not affected thereby.

The final question under our first head is: Where, as here, the city officials, by ordinance duly passed and approved prior to the effective date of the relevant section of the Act of 1919, were authorized to make the loans now under consideration, but had not in fact actually made them, are those ordinances avoided even as to proposed capital outlay, because the certificate of the city controller was not obtained "prior to the authorization of such debt"? This is the most difficult question in the case. It is evident the legislature appreciated that difficulty would be experienced in applying the radical departure from previous methods which it ordained in the section under consideration, and hence postponed the effective date thereof to one month after the approval of the act. Did the legislature intend to postpone the effective date still further in cases where the debt had previously been authorized? If such had been its intention it could have easily said so by a provision that the section should not apply to cases where the increase of debt had been already authorized; but it did not say so. It is evident, too, the legislature must have recognized the difficulty which would arise in cases where an ordinance authorizing the borrowing of the money, included current as well as capital expenditures, as do the present ordinances regarding the $47,425,000 and $12,970,000 loans. In such cases a proposed lender would not know whether he was lending his money for a lawful or an unlawful purpose; and hence would not lend at all, unless the

borrowing was backed up by the conclusive certificate of the city controller. That certificate was required to be issued, however, "prior to the authorization of such debt" by the ordinance empowering the city officials to borrow. To render effective, therefore, the purpose intended to be accomplished, we must hold that all ordinances authorizing the city officials to borrow which were not backed by the certificate of the city controller, became unavailing after the effective date of the provision of the act we are considering, so far as the loans authorized thereby had not theretofore been actually made; and, since the legislature made no distinction in this regard between loans for capital expenditures, loans for current expenses and loans partially for each, this conclusion must be held applicable to ordinances relating to all classes of loans.

The conclusion just stated is enforced by the language of section 8 itself, which says: "It shall be lawful for the city to borrow money or incur debt......for capital outlay of any kind, provided that all such proposed expenditures are certified by the city controller to be capital expenditures as distinguished from current expenses, prior to the authorization of such debt." This is a grant of power to be exercised in the future, that is, after the effective date of the section; and after that time the authority to "borrow money" for "capital outlay," is conditioned on compliance with the express provision that the certificate of the city controller be obtained. The prior acts giving power to borrow without that condition are expressly repealed by article XXIII of the Act of 1919.

It is true that pending proceedings not fully consummated would normally fall with the repeal of the laws under which they were begun; but this result is not brought to pass where, as here, those laws are substantially reënacted by the repealing act itself. In such cases the proceedings may be continued and concluded under the new law, subject, of course, to such modifications as it provides. That the Act of 1919 is in this regard a sub-

stantial reënactment of prior laws thereby repealed, save in so far as concerns the requirement of a certificate of the city controller and the provision regarding the illegality of loans to pay current expenses, is evident from a comparison of the Act of April 20, 1874, P. L. 65, and its supplements, with the similar provisions of the Act of 1919.

In effect the section of the Act of 1919 which we are considering makes it lawful to borrow money provided the certificate of the controller is obtained, and unlawful if it is not. This results from the use of the word "provided." Hence, since the section refers to the actual borrowing of the money, the attempt to borrow the $2,-000,000 after July 25, 1919, was unlawful because such attempt had not the certificate of the controller at its back, and so also, for the same reason, would any further efforts to borrow under the ordinances of June 29, 1916, and July 11, 1919, so long as the matter remains as it now is. Inasmuch, however, as the ordinances so far as they express a desire to borrow money for capital expenditures, and the vote of the electors granting consent thereto, are not antagonistic to the underlying purposes of the section under consideration, councils may from time to time, by supplementary ordinances, authorize the city officials to borrow money in accordance with the desire so expressed, providing "prior to the authorization of such debt" the city controller in each instance certifies that the purposes expressed in the new ordinance are capital outlay as defined by the Act of 1919.

For the general principles involved it is sufficient to refer, without elaboration, to The Hickory Tree Road, 43 Pa. 139; Haspel v. O'Brien, 218 Pa. 146; 26 Am. & Eng. Ency. of Law (2d Ed.) 758; 36 Cyc. 1084; and 25 Ruling Case Law 934.

The final question for our consideration is: Is Article XVII, Section 8, of the Act of 1919, unconstitutional? The objections to it do not seem to us to carry any weight. The statement in the November 5, 1918, amendment of

Article IX, Section 8, of the Constitution, that "In incurring indebtedness for any purpose the City of Philadelphia may issue its obligations maturing not later than fifty years from the date thereof," means no more than that the municipality may do so for any lawful purpose, though not named in the amendment. The unthinkable conclusion from defendants' contention is that the city is authorized thereby to borrow for private as well as public purposes. Nor does the section offend against article III, section 7, regarding local and special laws. Since all three amendments of Article IX, Section 8, of the Constitution put Philadelphia in a class by itself so far as relates to increasing its debt, it cannot be unconstitutional to legislate separately for the city upon that subject: Rymer v. Luzerne County, 142 Pa. 108. Nor does the requirement of a certificate by the city controller infringe article III, section 20, which provides: "The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever." Certainly an individual cannot be a "private corporation or association," and in order to be a "special commission" there would have to be delegated to him some of the duties thereof, yet here there is not even a suggestion of such delegation. Nor does the section impair the obligation of contracts. One cannot impair the obligation of a contract by forbidding its being made except upon specified conditions. We have not been advised that there are any contracts between the city and its contractors, by which the former agreed the latter should be paid out of loans to be created under the provisions of existing ordinances, and hence we are not called upon to decide how the Act of 1919 would be construed in its effect upon such a contract. No other constitutional provision has been brought to our atten-

tion, and we know of none, which said section might infringe; it is therefore held to be constitutional.

It follows that plaintiff is entitled to relief to the extent hereinbefore indicated. Since, however, it is highly improbable that the councils or officials of the city, present or future, will endeavor to impose upon the municipality an indebtedness without full compliance with the requirements of the Act of 1919 as herein interpreted, and since, if they did, it is certain no lender could be found to accept bonds issued under such circumstances, a formal decree will not be entered, or injunction issued, at this time; but leave is given counsel to apply therefor whenever necessary. The City of Philadelphia is to pay the costs.

DISSENTING OPINION BY MR. JUSTICE STEWART:

The Act of 25th of June, 1919, in express terms repeals so much of all prior acts as are in any way "in conflict or inconsistent with this act or any part thereof." The 8th section of article XVII of the same act, which makes it lawful for such city to borrow money or incur debt for the purposes therein mentioned, conditions the exercise of such right upon this express proviso, "provided that all such proposed expenditures are certified to the council of the city by the city controller to be capital expenditures, as distinguished from current expenses, prior to the authorization of such debt." I am of the opinion that to the extent indicated the Act of 1919 repealed all former acts which contained no such provision as we have quoted, not of course invalidating any contracts that may have been completed under their provisions; but, since with respect to the contemplated loans for capital expenditures, these not having been completed, the act at once operated to repeal the inconsistent parts of the former acts, the bonds therefor not having passed out of the hands or control of the councils before the act became operative, 25th June, 1919. "Acts which grant a right conditioned on different things are

clearly inconsistent. It is this inconsistency which operates as a repeal. That the statutes are in pari materia as to the appeal makes no difference, for the appeal, the same thing to which they relate, is conditioned on a different fact." Gwinner v. Lehigh & Del. Gap R. R. Co., 55 Pa. 126. This was the situation with respect to these two proposed loans which the court was asked to enjoin; one was for $67,100,000, of which proposed loan prior to the operative effect of the act on 19th July, $5,-000,000 of the issue had been sold; the other was for a loan of $42,450,000, of which $27,000,000 had been issued and negotiated, leaving of these two series unissued $77,100,000. What effect had the Act of 1919 upon these authorized but unexpended bonds? Had the act retroactive effect as to these? If it had none, the right of the councils to negotiate and issue them cannot be questioned; if otherwise—and it is unimportant whether the effect resulted from repeal or substitution—then the transaction being incomplete, the bonds remaining unissued and still in the city's control, and no third parties having any interest therein whatever; the only relation with respect thereto being between the state and the city, the legislature had a perfect right to stay the hand of the city by recalling the previous consent it had given, since the city can have no vested rights as against the Commonwealth: Phila. v. Fox, 64 Pa. 169. The municipality being but an instrument of the State, capable of doing only such things as the State permits, it results that it can have no vested right in any privilege given it by the State, and such privilege the State may withdraw at its pleasure. Sic volo, sic jubeo is the answer returned by the State to any complaint by the municipality where such withdrawal of privilege concerns only the State. This is the doctrine asserted in the case cited, and it is unimpeachable. In the present controversy, whatever the result here, no third party can be injured or prejudiced in the slightest. This circumstance is to be borne in mind when we come to consider the effect to be allowed

the express repeal by the Act of 1919 of all prior legislation in conflict or inconsistent with the provisions of the later act. Where the case is thus resolved, the rule of construction to be applied is thus stated in Cyc. Vol. 36, page 1224: "The general rule against the retroactive construction of statutes does not apply to repealing acts, and in the absence of a saving clause, or other expression of intention, the repeal of a statute had the effect of blotting it out as completely as if it had never existed and of putting an end to all proceedings under it. By way of exception to this general rule, however, the repeal of a statute will not operate to impair rights vested under it, or to revive rights lost or taken away under the repealed statute, or to affect acts performed or suits commenced, prosecuted and concluded under the former law." Again, in Endlich on the Interpretation of Statutes, page 379, we find the rule thus stated: "Again, mere inchoate rights, depending for their original existence upon the law itself, may be abridged or modified by the legislature at its pleasure, and statutes will not be presumed not to affect such rights existing in an unperfected state at the time of the enactment. As a general rule, whenever a statute gives a right, in its nature not vested, but remaining executory, if it does not become executed before a repeal of the law giving it, it falls with the law and cannot be afterwards enforced."

The rule is thus stated in 25 R. C. L., page 182, Sec. 183: "The general rule is that where a statute is repealed without a reënactment of the repealed law in substantially the same terms, and there is no saving clause or a general statute limiting the effect of the repeal, the repealed statute, in regard to its operative effect, is considered as if it had never existed, except as to matters and transactions passed and closed. There are cases which go so far as to say that the unqualified repeal of a law as effectually destroys rights and liabilities dependent upon it, not passed and concluded, as if the statute had never existed. It is, however, putting it strongly

enough to say that an unqualified repeal operates to destroy inchoate rights, as a release of imperfect obligations and as a remission of penalties and forfeitures dependent upon the destroyed statute."

Whatever right the city acquired under previous legislation was an inchoate right; what was attempted by the proceedings begun was the increase of municipal indebtedness by the negotiation and issue of bonds, and this remained unaccomplished except as to the bonds that had been actually negotiated. As to the bonds negotiated and issued, the rights of third parties intervened and no question is made as to their validity; but as to the unissued bonds, the Act of 1919 having become operative as to them, the right of the councils to issue them thereafter was abrogated. The act takes away from the city councils the power to authorize the issuing of loans such as this except upon the condition that prior to the authorization of the debt the city controller shall certify to the councils that the proposed expenditures are to be capital expenditures. What the legislature meant by the words "prior to the authorization of the debt" is very clearly discoverable from the act itself. In not less than a half dozen sections in the next succeeding article on indebtedness, the authority to increase municipal debt is referred to as an authority vesting in the councils by ordinance. In section 1 we find this: "Subject to such limitations as are now or may hereafter be established by the Constitution of this Commonwealth, any city of the first class may, from time to time, incur new debt or increase its indebtedness in such amount and in such manner as the council shall by ordinance have authorized. In section 2 this occurs: "In any ordinance authorizing the city to incur new debt or increase its indebtedness," etc. In the third section we find this: "Within such limitation in amount as is now or may hereafter be established by the Constitution, the council may authorize new debt to be incurred or an increase of indebtedness," etc. In the latter part of the same section this language

is used: "Any ordinance authorizing new debt to be incurred, or any increase of indebtedness," etc. In section 4 we find this: "Whenever the council shall by ordinance authorize new debt to be incurred......the ordinance authorizing such new debt to be incurred or such increase of indebtedness shall," etc. In section 5 we have this: "The said notice or advertisement shall contain a copy of the ordinance authorizing the new debt to be incurred," etc. This is quite enough to show that in using the term "authorization of such debt" as it occurs in the 8th section which we are now considering and where a certificate from the city controller is required "prior to the authorization of such debt," the legislature had in mind simply an authorization by council. The very first step taken by the councils in this proceeding was to authorize the proposed loans; the next was to ask for the approval of the voters. We are not concerned to inquire into the considerations which prevailed with the legislature to adopt this method of expression; it is enough to know that they did adopt it and that the language used is plain and unambiguous. It is also to be remembered that our concern is strictly with the Act of 1919, and the decisions of this court with respect to parts of prior acts which are repealed by the later, are to that extent inapplicable here.

It is urged that much inconvenience would result to the city because of the delay that would follow were the views here expressed to prevail. That much inconvenience would result is quite probable, but that circumstance gives the city no exemption from settled rules of construction. The responsibility for the inconvenience would rest with the legislature, not with this court. A saving clause of two lines in the act, excepting out of its operation cases such as this, would have avoided it. The legislature having, for reasons of its own, failed to insert such clause, it is beyond our power to supply it. To the extent indicated, I would sustain the bill, and favor a decree which would give effect to the views I have here expressed.