[No. 42180. En Banc. August 3, 1972.]

THE STATE OF WASHINGTON, *Appellant*, v. CHARLES M. CARROLL *et al.*, *Respondents*.

96

*Christopher T. Bayley, Prosecuting Attorney, Richard G. McBroom, Jr., Chief Special Deputy,* and *David Boerner, Chief Criminal Deputy,* for appellant.

*Carroll, Rindal & Shulman, Joel A. C. Rindal, Neal J. Shulman, Carkeek, Harris, Harris, Myers & Vertrees, John C. Vertrees, DeGarmo, Leedy, Oles & Morrison, Stuart G. Oles, Lee R. McNair, Murray B. Guterson, Malcolm L. Edwards, Jack E. Wetherall, Walthew, Warner, Keefe, Arron, Costello & Thompson, Thomas P. Keefe, Clinton, Moats, Andersen & Fleck, James A. Andersen, Kenneth O. Eikenberry, Kempton, Savage & Gossard, Anthony Savage, Lee, Carney, Smart & Bever,* and *Basil L. Badley,* for respondents.

WRIGHT, J.—This is a direct appeal from the superior court. The state, acting through the prosecuting attorney of King County, appeals from a judgment of dismissal.

MATTERS RELIED ON BY TRIAL COURT

The trial court dismissed this prosecution upon two grounds: One that the grand jury lost its de jure existence in the evening of May 10, 1971, and, two, that the statute under which the charges were laid was void. Respondents urged several other grounds for dismissal which were not considered by the trial court.

CLAIMED EFFECT OF REPEAL

In the evening of May 10, 1971, the Governor of the State of Washington signed into law the "Criminal Investigatory Act of 1971" as chapter 67. Defendants contend, and the trial court held, the grand jury then in session ceased to exist upon the signing of the 1971 act, which contained an emergency clause. This contention is directly opposed to

*State ex rel. Duvall v. City Council,* 71 Wn.2d 462, 429 P.2d 235 (1967).

RCW 1.12.020 provides:

> The provisions of a statute, so far as they are substantially the same as those of a statute existing at the time of their enactment, must be construed as continuations thereof.

Respondents attempted to show greater differences between the 1971 act and the prior statute than existed between the old and new statutes in *Duvall.* We do not think the differences are sufficient to produce a different result. In *Duvall,* as here, there was no savings clause in the new act.

■ The principle announced in *Duvall* is adopted by the overwhelming weight of authority. Numerous cases are cited by the court in *Duvall* and no useful purpose would be served by repeating those citations.

In *Northern Pac. R.R. v. Ellison,* 3 Wash. 225, 227, 28 P. 333 (1891), we said:

> We can readily see how a law can be continued in force by reenacting it, but we are unable to perceive how it can be repealed by that means. It may thus be transferred from one statute to another, but it is still the same law, and no rights can be affected merely by the change of position.

In *Kraus v. Philadelphia,* 265 Pa. 425, 109 A. 226 (1919), the Supreme Court of Pennsylvania said in part:

> It is true that pending proceedings not fully consummated would normally fall with the repeal of the laws under which they were begun; but this result is not brought to pass where, as here, those laws are substantially reenacted by the repealing act itself. In such cases the proceedings may be continued and concluded under the new law, subject, of course, to such modifications as it provides.

*People v. Lowell,* 250 Mich. 349, 230 N.W. 202 (1930), is an often cited case for the proposition that a prosecution started under an act which is amended during the pendency of the prosecution will fail. That case is not in point

for several reasons. Michigan at that time had no statute similar to RCW 1.12.020. The facts were quite different. *Lowell* was a prosecution for violation of the liquor laws of Michigan. The act involved was amended by act No. 114 of the Public Acts of 1929 to increase the penalty by doubling it from a fine of $1,000 and 1 year imprisonment to a fine of $2,000 and 2 years imprisonment. The rule of *Lowell* is not applicable to the facts herein, and further that rule is not followed in the majority of jurisdictions. An even stronger reason not to follow *Lowell* is that it "violates good common sense and works against the interests of society," as was said by Butzel, J. in his masterful dissent from *Lowell*.

■ The existence and functioning of the grand jury in King County were well known in the state of Washington, and we cannot believe the legislature intended to void those proceedings. On the contrary it is far more likely the enactment of the 1971 law as a model grand jury act was intended by the legislature to aid the effectiveness of the grand jury process. It was intended to assist both pending investigations and all future investigations which might be undertaken anywhere in the state.

Truly, indeed, to hold the King County grand jury ceased to exist in the evening hours of May 10, 1971, would be against good common sense and would be against the interests of society. It would be the kind of thing that causes the public at large to lose confidence in law. We do not so hold.

VALIDITY OF STATUTE—CLAIMED ELECTION OF REMEDIES

We then reach the question of the validity of the statute. It is the contention of respondents that RCW 9.22.010 and 9.22.040 may be considered together to give the prosecuting attorney a choice of whether to charge a felony or a gross misdemeanor for the identical act. Respondents contend the statutes are void under the holding of *Olsen v. Delmore,* 48 Wn.2d 545, 295 P.2d 324 (1956).

RCW 9.22.010 was passed in 1909. It is a general statute which provides every violation shall be a gross misdemeanor.

RCW 9.22.040 was passed in 1961. It relates specifically to

conspiracy against named units of government, and provides that every violation shall be punished by a fine of not more than ten thousand dollars or by imprisonment for not more than 5 years or by both, thus making it a felony.

■ RCW 9.22.040 is a specific statute, that is, *it only prohibits conspiracy against certain governmental units.* There is, therefore, a difference between the crime defined in RCW 9.22.010 and the crime defined in RCW 9.22.040. If the conspiracy be against one of the specified governmental units, the prosecuting attorney must charge such offense under the special statute, RCW 9.22.040.

This is similar to the situation wherein the general statute on manslaughter, RCW 9.48.060, was passed in 1854. In 1937 the negligent homicide statute, RCW 46.56.040 (now RCW 46.61.520), was passed providing only for the crime when committed by the driving of a motor vehicle.

The matter was considered in *State v. Collins,* 55 Wn.2d 469, 470, 348 P.2d 214 (1960) and it was therein held the prosecuting attorney could not make a choice between the two statutes. We said in part:

> The general manslaughter statute antedates the special negligent homicide statute, which is directed to one specific mode of committing a homicide. This invokes the rule that, where a general and subsequent special statute relates to the same subject, the provisions of the latter must prevail. *Hartig v. Seattle,* 53 Wash. 432, 102 Pac. 408.

> We hold that in all cases where the negligent homicide statute is applicable, it supersedes the manslaughter statute. This not only accords with the rules of statutory construction, but is the interpretation necessary to satisfy the requirements of the fourteenth amendment to the Federal constitution requiring equal protection of the law for all persons. The principle of equality before the law is inconsistent with the existence of a power in a prosecuting attorney to elect, from person to person committing this offense, which degree of proof shall apply to his particular case.

There is no choice given to the prosecuting attorney to

charge under one section or the other, and, therefore, the statute is valid.

### OTHER MATTERS NOT RELIED ON BY TRIAL COURT

■ If the judgment of the trial court can be sustained upon any ground, whether the grounds stated by the trial court or not, it is our duty to affirm. *Peterson v. Hagan,* 56 Wn.2d 48, 351 P.2d 127 (1960) and cases cited therein at page 52. *See also Vacca v. Steer, Inc.,* 73 Wn.2d 892, 441 P.2d 523 (1968); *Kirkland v. Steen,* 68 Wn.2d 804, 416 P.2d 80 (1966). We will, therefore, consider the other matters raised by respondents.

### TITLE OF THE ACT

The respondents argue that the 1961 act (Laws of 1961, ch. 211) violates Const. art. 2, § 19 which reads: "No bill shall embrace more than one subject, and that shall be expressed in the title." Even the briefest examination of chapter 211 will clearly show it embraces only one subject, namely, conspiracy against the state, any county, city, town, district, or other municipal corporation, or any department or agency thereof. That subject is expressed in the title.

The real objection is the respondents' claim the title is too broad. They object to the words, "increasing penalties for certain collusion; amending section 3, chapter 12, Laws of 1921 and RCW 9.18.140." The words, "increasing penalties for certain collusion," are certainly within the act. The penalty for conspiracy against the designated entities was greatly increased, from a gross misdemeanor to a felony with punishment by a fine of not more than ten thousand dollars, or imprisonment for not more than 5 years, or both. That was certainly an increased penalty. An amendment removed part of the act as it was originally written and introduced. Sections 2 and 3 of the original bill were deleted and, therefore, RCW 9.18.140 was not amended. That proposed amendment was the essence of section 2. Section 3 was merely a severability clause which became surplusage when section 2 was stricken. The title was not changed at the same time and, therefore, included more than the act.

This situation gave rise to the claim the title was too broad.

██ We held in *Cudihee v. Phelps*, 76 Wash. 314, 136 P. 367 (1913) that too broad a title was not a violation of article 2, section 19.

In *Howlett v. Cheetham*, 17 Wash. 626, 635, 50 P. 522 (1897), we said: ". . . a title may be broader than the statute and still be good as to the subject it fairly indicates."

Upon the authority of those cases we hold the portions of the title which were inadvertently left in after the bill itself was amended are surplusage, and therefore, the statute now known as RCW 9.22.040 is valid as against any attack based upon the title.

EQUAL PROTECTION—SELECTION OF THE GRAND JURY

The respondents next argue in support of the judgment that the grand jury was improperly selected. The grand jury was impaneled under the old statute which was repealed by the 1971 law. Respondents argue that the old statute was unconstitutional under the equal protection provisions of state and federal constitutions.

RCW 10.28.010 and 10.28.030 provide for challenges to the panel (.010) and to individual jurors (.030) to be made by or on behalf of any person in custody or held to answer for an offense at the time of the selection of the grand jury. Respondents rely heavily upon the dissenting opinion in *State v. Beck*, 56 Wn.2d 474, 349 P.2d 387, 353 P.2d 429 (1960) and upon the dissenting opinions in *Beck v. Washington*, 369 U.S. 541, 8 L. Ed. 2d 98, 82 S. Ct. 955 (1961). In referring to the opinion of Donworth, J. as a "dissenting opinion" it should be said the court was evenly divided in that case and thus affirmed. The opinion which favored reversal was, thus, called the "dissenting opinion" although it in fact was signed by four members of the court, the same number who signed the opinion referred to as the "majority opinion."

██ Actually, we can gain little as authoritative precedent from the *Beck* cases. The case in this court was an affirmance by a four to four division, with one member of

the court disqualified. The United States Supreme Court declined to pass upon the matter, and it is mentioned only in dissenting opinions.

An examination, however, of the dissenting opinion of Donworth, J. will show the dissimilarity between the *Beck* case and the case at bar. In *Beck* the grand jury was called especially to investigate the business dealings of Mr. Beck, a fact well known to the public and, obviously, to the members of the grand jury. He was just as much a specific subject of inquiry as would be a "person in custody or held to answer for an offense." In the case now before the court, the grand jury was called for a more general investigation. The same problem, peculiar to the *Beck* case, was pointed out in the dissent of Black, J. in the Supreme Court of the United States. We must, therefore, resolve the problem with little help from the several opinions in the *Beck* cases.

■ We must start with the proposition that an act of the legislature is presumed valid and the burden is upon him who questions that validity. *O'Connell v. Conte,* 76 Wn.2d 280, 283, 456 P.2d 317 (1969); *Boeing Co. v. State,* 74 Wn.2d 82, 86, 442 P.2d 970 (1968).

The respondents have not shown any unconstitutional discrimination. The grand jury in this case was not impaneled for a special purpose as was the grand jury in the *Beck* case. It was an almost opposite situation in which the purpose of the grand jury was to conduct a sweeping investigation of many public offices and officers, and of persons having dealings with such offices and officers.

Under the circumstances herein it would obviously be impossible to know the identity of those whom the grand jury might in the future investigate. Under the circumstances of this case, therefore, there would be a valid basis for classification by the legislature to give a challenge to those being held to answer for a crime without giving such challenge to others.

■ Another reason compels the same result. The rule is well recognized that one may not question the validity of a statute if he is not adversely affected thereby. *State v.*

*Lundquist,* 60 Wn.2d 397, 374 P.2d 246 (1962); *State v. Bowman,* 57 Wn.2d 266, 356 P.2d 999 (1960).

Herein the respondents were in no way adversely affected. No challenge was made by anyone at the formation of the grand jury. Therefore, the composition of the grand jury was not affected by existence of a right which was not exercised. Respondents do not have standing to question the constitutionality of the old statute. The "old" statute is mentioned because the provisions for challenge are eliminated from the 1971 act.

PERSONS PRESENT IN THE GRAND JURY ROOM

The respondents argue that unauthorized persons were present in the grand jury room, and hence, the indictments were void. RCW 10.40.070 provides in part:

> The motion to set aside the indictment can be made by the defendant on one or more of the following grounds, and must be sustained.
>
> . . .
>
> (3) When any person, other than the grand jurors, was present before the grand jury when the question was taken upon the finding of the indictment, or when any person, other than the grand jurors, was present before the grand jury during the investigation of the charge, except as required or permitted by law.

RCW 36.27.060 provides in part:

> The prosecuting attorneys and their deputies of class three counties and counties with population larger than class three counties shall serve full time and shall not engage in the private practice of law: . . .

The above-quoted section was enacted in 1969 and was effective at the time involved in this proceeding. Laws of 1969, 1st Ex. Sess., ch. 226.

Complaint is made of the presence in the grand jury room of two special deputy prosecuting attorneys, Evan L. Schwab and John B. Merritt. Both were capable and experienced attorneys who had connections with established law firms in the county. There is no contention that either failed to devote his full time and attention to the duties as special deputy prosecuting attorney while so serving, al-

though both had left that employment before the end of the grand jury.

In the case of Mr. Merritt, there is no problem. He did no work other than in his public capacity while employed as a special deputy. He did not receive money from his law firm, but actually paid into the firm during that time. His check from the county was regularly endorsed and delivered to his firm. He received his usual pay from the firm which was less than the check from the county.

Mr. Schwab presents a different situation. His regular pay from his firm was larger than the check from the county. He kept his check from the county and received from his firm an additional sum to make up the difference. He did some work evenings and weekends for the firm, but spent full time during customary working hours on his duties with the grand jury. There is no question Mr. Schwab was an honest, conscientious employee of the county of King and devoted his normal working hours exclusively to his employment as a special deputy of the prosecuting attorney. The problem is whether or not there was a violation of statute, and, if so, if such violation rendered the indictments void.

The statutes involved here are RCW 36.27.060 and 36.27.040. There is no suggestion either of the special deputies received "any fee or reward" as prohibited by RCW 36.27.050, nor that they in any other way violated said section. RCW 36.17.020 is in no way applicable, it being a statute fixing the salary of the prosecuting attorney. The words "who are forbidden under section 2 of this 1969 amendatory act to engage in the private practice of law" are merely descriptive of certain prosecuting attorneys.

RCW 36.17.010 is quoted by respondents. The essence of that section is to provide a county officer may not make extra profits from his official position. It has been construed to require a county clerk to pay naturalization fees into the county. *Franklin County v. Barnes*, 68 Wash. 488, 123 P. 779 (1912). The same section has also been held to prohibit a sheriff from keeping for his personal use the money re-

ceived for the keep of federal prisoners. *King County v. Stringer*, 130 Wash. 287, 227 P. 17 (1924).

██ RCW 36.27.040 is also quoted by respondents. It relates to the appointment of deputy prosecuting attorneys. Respondents seem to rely on those parts of the section which provide the deputies "shall have the same power in all respects" and "shall have the same qualifications required of the prosecuting attorney." All of the quoted language is in the first part of the section. The latter part of the section relates to special deputy prosecuting attorneys to aid in grand jury matters. It is significant that the two parts of the section are on different subjects.

The problem of the application of RCW 36.27.040 was submitted to the Honorable Stanley C. Soderland and he answered by a letter dated June 29, 1971, as follows:

Dear Mr. Schwab:

You have asked me whether RCW 36.27.060 applies to you as a special deputy prosecutor appointed for purposes of attending upon the grand jury. It appears quite clear to me that that statute does not apply. RCW 36.27.040 provides that a prosecuting attorney may appoint deputies who shall have the same power in all respects as he has. It further provides that the prosecuting attorney may appoint special deputy prosecuting attorneys to work with the grand jury. RCW 36.27.060 says that the prosecuting attorneys and their deputies in the larger counties "shall serve full time and shall not engage in the private practice of law."

That requirement that a deputy serve full-time and not engage in law practice quite obviously applies to a regular deputy who has the same power in all respects as the prosecuting attorney. It cannot apply to a special deputy prosecutor hired for a limited time to do a special job. If a special deputy prosecuting attorney had to be a full-time deputy not engaging in the private practice of law, there would be no purpose in the statute providing for special deputies. It would merely say that the attorney attending upon the grand jury must be a regular full-time deputy prosecuting attorney. Furthermore, the very purpose of the statute allowing the appointment of practicing attorneys from any county in the state as special

deputies for the grand jury is to allow the prosecutor to engage this special talent from the experienced, practicing lawyers rather than use the regular deputies on his staff who are often young, inexperienced men. To provide that such an experienced lawyer would have to give up his law practice completely and take employment as a regular deputy prosecuting attorney full-time would defeat the very purpose of the statute in allowing the appointment of special deputies. Section 2(2) of the Criminal Investigatory Act of 1971 recognizes and maintains this distinction between a regular and special deputy.

Very truly yours,
/s/ Stanley C. Soderland

The statute clearly distinguishes a "deputy" from a "special deputy." The "deputy," mentioned in the first part of the section, "Shall have the same qualifications" and "the same power in all respects" as the prosecuting attorney. The "special deputy," mentioned in the latter part of the section, has limited powers and duties. He functions only in connection with a grand jury. He is specifically "required or permitted by law" to present matters and testimony to a grand jury. Furthermore, the qualifications are different, the "special deputy" is not required to be a resident of the county. Manifestly, the requirement to "have the same qualifications" as the prosecuting attorney does not apply to the "special deputy."

In view of the foregoing, the special deputy prosecuting attorneys, therefore, were properly and lawfully functioning as such, and were in the grand jury room, "as required or permitted by law."

 In addition to the foregoing, there are two additional reasons why the contention there were unauthorized persons before the grand jury is not well taken. The violation of a statute such as here involved will not cause the prosecuting attorney to forfeit his office or be disqualified from performing the duties thereof.

In *Ray v. Hand*, 225 Ga. 589, 170 S.E.2d 692 (1969), it was held an act prohibiting district attorneys from engaging in the private practice of law does not provide "qualifi-

cations, disqualifications, of conditions of eligibility for the office of solicitor general (now district attorney)."

In *County of Madera v. Gendron,* 59 Cal. 2d 798, 382 P.2d 342, 31 Cal. Rptr. 302 (1963), it was held a district attorney might receive his salary regardless of the fact he violated a restriction against his engaging in the private practice of law.

RCW 36.27.060 prohibits certain prosecuting attorneys and their deputies from engaging in the private practice of law. The statute, however, does not make such conduct a crime, nor does it provide for forfeiture of office or disqualification to assume the office. Under such a provision the forfeiture of a public office would not be presumed.

■ We hold Mr. Merritt and Mr. Schwab were de jure special deputy prosecuting attorneys. However, a person duly appointed to a public office is a de facto officer even if he is not a de jure officer. As such his official acts are not subject to collateral attack. *State v. Britton,* 27 Wn.2d 336, 344, 178 P.2d 341 (1947), was a case in which the Honorable Matthew W. Hill had been appointed as a judge of the superior court to replace the Honorable Malcolm Douglas while the latter was serving in the armed forces. The objection was made that the act under which Judge Hill was appointed was unconstitutional and void. The court said:

> We do not feel called upon to determine the constitutionality of chapter 201 of the session laws of 1941 in this proceeding. Judge Hill was appointed by Governor Langlie, and he held the position from December 28, 1944, through June 28, 1946. He held it by virtue of his appointment. There can be no question but that he was a *de facto* judge.

Later in the same opinion there is quoted from 1 Bouvier's Law Dictionary (Rawle's 3d rev.) 761 the following: " 'An officer *de facto* must be submitted to as such until displaced by a regular direct proceeding for that purpose; . . .' ".

DOES RCW 9.22.040 DEFINE A CRIME?

It is the contention of respondents that RCW 9.22.040

does not define a crime and makes nothing criminal. For this position respondents cite and rely upon *State v. Davis,* 48 Wn.2d 513, 294 P.2d 934 (1956). There are, however, substantial differences between the statute in *Davis* and the statute here involved (RCW 9.22.040). The statute there was Laws of 1955, ch. 241, § 3. Said statute contained an obvious error which rendered it substantially meaningless. From a reading of that statute it would appear a number of words had been omitted at some stage of the enactment process.

WERE FELONIES AND MISDEMEANORS CHARGED IN A SINGLE COUNT?

Next, the respondents allege misdemeanors and felonies were charged in a single count and, therefore, the indictment was duplicitous. In support of that position respondents cite *State v. Pettit,* 74 Wash. 510, 133 P. 1014 (1913) and *State v. Hennessy,* 114 Wash. 351, 195 P. 211 (1921). Interestingly, both of those cases held the information involved was good. While stating general and well-recognized rules neither of those cases in any way support the position of respondents.

RCW 9.22.040 was taken directly from the federal statute, 18 U.S.C.A. § 371, which has been the law for many years. The identical question has been litigated many times in the federal courts. It is the rule that a statute adopted from another jurisdiction will carry the construction placed upon such statute by the other jurisdiction. *Jackson v. Colagrossi,* 50 Wn.2d 572, 313 P.2d 697 (1957); *Washington Escrow Co. v. Blair,* 40 Wn.2d 432, 243 P.2d 1044 (1952); *In re Third, Fourth & Fifth Aves., Seattle,* 49 Wash. 109, 94 P. 1075, 95 P. 862 (1908); *Bickford v. Eschbach,* 167 Wash. 357, 9 P.2d 376 (1932); *State v. Brunn,* 145 Wash. 435, 260 P. 990 (1927).

The cases holding the federal statute valid are numerous. In *Frohwerk v. United States,* 249 U.S. 204, 210, 63 L. Ed. 561, 39 S. Ct. 249 (1919), it was said, "The conspiracy is the crime, and that is one, however diverse its objects." In *Braverman v. United States,* 317 U.S. 49, 53, 54,

87 L. Ed. 23, 63 S. Ct. 99 (1942) it was held a conspiracy to commit several crimes was but one conspiracy, one crime, and one punishment.

Upon the authority of the numerous federal cases construing the substantially identical statute, the indictment is not duplicitous.

### DID THE INDICTMENT CHARGE A CRIME COMMITTED BEFORE THE PASSAGE OF RCW 9.22.040?

Again, we mention that RCW 9.22.040 was taken substantially verbatim from the federal statute known as 18 U.S.C.A. § 371. Numerous federal cases have passed on the identical question and have found the statute does not create an ex post facto crime. *Huff v. United States*, 192 F.2d 911 (5th Cir. 1951), *cert. denied*, 342 U.S. 946, 96 L. Ed. 703, 72 S. Ct. 560 (1952); *Leyvas v. United States*, 371 F.2d 714, 717, 718 (9th Cir. 1967). Conspiracy is a continuing crime. The federal statute, like RCW 9.22.040 requires an overt act. In *Leyvas* it was held the conspiracy is deemed to be committed on the date of the last overt act.

Having considered each of the contentions of respondents, we find the indictment to be valid and, therefore, reverse.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, and STAFFORD, JJ., concur.

UTTER, J., concurs in the result.

Petition for rehearing denied October 18, 1972.