[No. 24382. Department One. June 7, 1933.]

NATIONAL CREDIT COMPANY, *Respondent*, v. CASCO COMPANY, *Appellant*.[1]

*Cleland & Clifford,* for appellant.
*Thos. L. O'Leary,* for respondent.

MILLARD, J.—The successor in interest of a conditional sales vendor brought this action to recover from the alleged successor in interest of the conditional sales vendee a balance claimed to be due on the purchase price of the subject matter (a neon electric sign) of a conditional sales contract. The cause was tried to the court, whose findings and conclusions were, in effect, that the defendant adopted the sales contract and

[1]Reported in 22 P. (2d) 670.

was bound by its terms. Judgment was entered accordingly. The defendant has appealed.

Appellant contends that its payments under protest to respondent, and other conduct, did not constitute any assumption of the contract in question.

The facts, summarized below, clearly show an assumption by the appellant of the obligations of the conditional sales contract, and bring the case at bar within the rule enunciated at an early date by the supreme court of the United States, and followed by us in *Great Western Theatre Equipment v. M. & E. Theatres,* 164 Wash. 557, 3 P. (2d) 1003, 7 P. (2d) 1119:

"It is not necessary that a party should deliberately agree to be bound by the terms of a contract to which he is a stranger, if, having knowledge of such contract, he deliberately enters into relations with one of the parties, which are only consistent with the adoption of such contract. If a person conduct himself in such manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations." *Wiggins Ferry Co. v. Ohio & Mississippi R. Co.,* 142 U. S. 396, 408.

The Avalon Theatre Company and the appellant were closely affiliated domestic corporations. Millard Lemon was the president of both corporations. His son was appellant's treasurer and the Avalon Theatre Company's secretary. By conditional sales contract, dated July 28, 1930, the Multachrom Tubelight Company sold to the Avalon Theatre Company a "neon" electric sign. By various mesne assignments, the ownership of the sales contract was acquired, as of January 24, 1931, by the respondent, who succeeded to the rights of the vendor.

The appellant owned the building which was occupied by the Avalon Theatre Company, by virtue of a lease

dated April 30, 1930, from appellant. As security for payment of the rental under the lease, the theatre company gave to the appellant a chattel mortgage upon all the furniture and fixtures (included, "one (1) electric sign") owned by the lessee and located upon the premises. The appellant foreclosed that mortgage because of failure of the theatre company to make the required rental payments. On July 14, 1931, the appellant received from the sheriff a bill of sale of all of the property covered by the chattel mortgage. Included in the personal property described in that bill of sale is "one electric sign." It should be borne in mind that, at this time, the "neon" sign, purchased under contract of July 28, 1930, and installed in September, 1930, was still on the building.

On July 17, 1931, three days subsequent to appellant's receipt of the bill of sale from the sheriff, the appellant leased to the Liberty Theatre Company of Olympia the theatre building (affixed to which was the "neon" sign) "together with all furniture, fixtures and equipment of every nature now in and upon said premises which have heretofore been used in connection with the operation of said theatre." The lessee was given an option to purchase, on and after a certain date, if payments of rent were made as provided by the leasing agreement, "all of the furniture, fixtures and equipment leased hereunder, a detailed inventory of which is hereto attached and by reference made a part hereof." The inventory attached to the lease lists, as included therein, "neon sign and neon from Multachrom Tubelight Company, Seattle, Washington (Purchased on contract)."

The "neon" sign, which, in September, 1930, was affixed to the theatre building following removal therefrom of an electric sign which was on the building when it was leased to the Avalon Theatre Company,

was deemed by the appellant, following foreclosure of the chattel mortgage, to be its property. That "neon" light was leased by appellant to the Liberty Theatre Company, and an option given by appellant to its lessee to purchase the "neon" light within a stated period upon performance of the conditions of the leasing agreement. The "neon" light was on the building at the time of the trial of this action.

So, too, recognizing its obligation under the contract, the appellant made four payments covering eleven installments due under the contract. The sales contract was executed July 28, 1930. Nine of the installments (payments were due monthly, commencing August 10, 1930) were paid by checks of the vendee, Avalon Theatre Company, Gerry Lemon, Treasurer, to the vendor, Multachrom Tubelight Company. On July 30, 1930, the installments for August and September were paid. On October 10, 1930, the October installment was paid. On November 5, 1930, the November installment was paid. On November 7, 1930, the December installment was paid. On December 31, 1930, the January, 1931, installment was paid. On March 7, 1931, the February installment was paid. On April 3, 1931, the March and April installments were paid.

In June, 1931, appellant commenced an action to foreclose chattel mortgage given by the theatre company as security for payment of rent. As recited above, the chattel mortgage was foreclosed, and sheriff's bill of sale, covering the "neon" light and other personal property of the theatre company, was delivered to the appellant. Three days later, the appellant leased its building, the "neon" light, etc., to the Liberty Theatre Company. On September 15, 1931, the respondent was paid, by a check in the amount of $188 drawn by Gerry Lemon, Trustee, the four in-

stallments due on the "neon" light for the months of May, June, July and August, 1931.

No further payments were made until November, 1931. On or about November 4, 1931, respondent's counsel called on the appellant's president and treasurer, and insisted upon resumption of payments of the monthly installments, as provided by the conditional sales contract. After a number of conferences, the appellant's treasurer called on respondent's counsel November 16, 1931, and gave to counsel a check of that date in payment of three installments. This brought the contract to date, the payment covering installments for September, October and November. That check was signed "Gerry Lemon, Trustee," and made payable to respondent's counsel, who endorsed same and transmitted it to his client.

On February 25, 1932, the appellant, by check of the "Casco Company, by Millard Lemon," to the order of respondent's counsel, paid installments due in December, 1931, and January, 1932. Mr. Lemon's letter of transmittal reads as follows:

"I am handing you herewith our check for $94 to apply as payment for two months upon Avalon Theatre sign.

"Had the Olympia National Bank not closed its doors this payment would have covered up to date but as you know we are trying to do a hundred dollars of business with fifteen dollars. This payment is made, as our earlier payments, with a feeling that they should be made by the Fox Co. but we have trouble enough just now without testing the case in court."

By check, dated March 16, 1932, of "Casco Company, by Gerry Lemon," to the order of respondent's counsel, the appellant paid the installments for February and March, 1932. On several occasions, respondent's counsel advised appellant's president and treasurer that, if the matter could not be adjusted out of

court, an action would be instituted to collect the balance due under the contract. It appears from the evidence that the appellant was of the view that the payments on the "neon" light should be made by the Liberty Theatre Company, appellant's lessee; that it was appellant's intention to have it stipulated in the lease that the lessee should pay the balance due on the sales contract. Refusing thereafter to make further payments, this action was instituted, and resulted as recited above.

The appellant retained possession of the sign at all times after its installation on appellant's building. It used the sign at all times after the sign had been installed. It leased the sign to the Liberty Theatre Company after acquiring, at sheriff's sale, all assets of the previous lessee. It did more than promise to pay the installments due under the contract —it paid those installments and brought the contract to date.

There was no payment "under protest." Appellant's belief that its lessee should pay the installments due under the contract, and appellant's payment thereof rather than accept the challenge of a test in court to determine liability if payments were not made, does not constitute "payment under protest."

Everything that appellant did with respect to the subject matter of the contract, up to the commencement of this action, was consistent only with the theory— and absolutely inconsistent with any other reasonable theory—that it had adopted the sales contract. Having accepted the benefits of the contract, appellant can not repudiate its obligations.

The judgment is affirmed.

MAIN, BLAKE, MITCHELL, and HOLCOMB, JJ., concur.