[No. 33522.    Department One.    July 11, 1957.]

A. J. JACKSON, *as Trustee in Bankruptcy, Respondent*, v. MIKE COLAGROSSI *et al., Appellants.*[1]

*Joseph A. Moschetto* and *Patrick A. Geraghty*, for appellants.

*Croson, Johnson & Wheelon* and *Willard Hatch*, for respondent.

FOSTER, J.—Appellants, stockholders of Dale R. Peterson & Co., Inc., a bankrupt Washington corporation, appeal from an adverse judgment of eighteen thousand dollars for

[1] Reported in 313 P. (2d) 697.

money paid them by the bankrupt corporation to repurchase their shares of stock in that concern.[2]

In this action by the trustee in bankruptcy of the said corporation, appellants offered no evidence but rested upon completion of respondent's case, and while the statement of facts contains two hundred ninety pages, the issue is simple.

The bankrupt corporation's business was general construction. Appellant stockholders are copartners engaging in metal fabrication. To enable the bankrupt corporation to obtain a performance bond, appellants purchased authorized but unissued shares of the capital stock of the said corporation and paid eighteen thousand dollars therefor. There was a simultaneous repurchase agreement by the now bankrupt corporation.

Dale R. Peterson & Co., Inc., fell upon evil days and, by the time of the performance of the repurchase agreement, owed a very substantial sum of money which it was unable to pay. It is admitted the trustee holds over two hundred thousand dollars in provable claims. Appellants were likewise indebted to Dale R. Peterson & Co., Inc., and to enable it to fulfill its repurchase agreement, appellants paid eighteen thousand dollars owing to that concern, which was simultaneously used by it to repurchase appellants' stock.[3] This, the trial court said, estopped appellants to assert otherwise. (cf. *Markley v. Markley*, 31 Wn. (2d) 605, 198

---

[2] Dale R. Peterson, Daniel L. Ruthford, E. C. Brunberg, and Daniel A. Peterson, directors of the defunct bankrupt corporation, were joined as additional defendants, but after the trial the case against them was dismissed. Appellants appealed from that portion of the judgment also, but that was dismissed by stipulation.

[3] "It may very well be that as between the parties, although they dressed it up as something else, it was actually a loan and a bookkeeping entry where not much cash changed hands one way or the other. But they having elected to put it in that way for the purpose of representation to creditors, are estopped to deny that the deal was in substance different from the actual form that it was in." Trial court's oral decision.

P. (2d) 486; *Mansfield State Bank v. Leslie Hardware Co.,* 126 Wash. 562, 219 Pac. 15, 222 Pac. 901.)

That transaction reduced the capital stock from twenty-four thousand dollars to six thousand dollars, and findings further recite there was then no earned surplus with which to pay for the repurchase of the appellants' stock, and that the corporation was then unable to pay its debts in the usual course of business and was rendered still further insolvent by the repurchase payment.

Until the enactment of Laws of 1947, chapter 195, p. 840, which, so far as material, is set out in the margin,[4] the trust fund doctrine prohibited a corporation from repurchasing its own stock,[5] and this was not altered by the enactment of the uniform business corporations act of 1933.[6] Commentators have remarked about the absence of such provisions in the uniform act,[7] which is indeed strange in view of the conflict in the decisions upon this point in other states.[8] However, by the 1947 amendment, a corporation was permitted to repurchase its own shares provided there was an earned surplus with which to pay therefor. In contrast, the co-operative associations act provides that such an association may repurchase its own stock and pay therefor out of any funds whether surplus or not.[9]

The legislature in authorizing a corporation to purchase its own stock, copied the Delaware statute almost

---

[4] "(2) Every corporation organized hereunder shall have the power to purchase, hold, sell and transfer shares of its own capital stock: *Provided,* That no such corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital stock of the corporation." (*cf.* RCW 23.08.080; Rem. Supp. 1947, § 3803-12, p. 132.)

[5] *State ex rel. Howland v. Olympia Veneer Co.,* 138 Wash. 144, 244 Pac. 261; *Kom v. Cody Detective Agency,* 76 Wash. 540, 136 Pac. 1155.

[6] *Whittaker v. Weller,* 8 Wn. (2d) 18, 111 P. (2d) 218.

[7] Ballantine, Lattin & Jennings on Cases and Materials on Corporations (2d ed.) 903.

[8] 23 Wash. L. Rev. 149.

[9] Laws of 1953, chapter 258, p. 694.

verbatim.[10]  By an unbroken line of decisions only recently reaffirmed,[11] this court is committed to the prevailing rule of construction that the adoption of a statute of another state likewise carries with it the construction placed upon such statute by the courts of that state.  The Delaware statute was construed in *In re International Radiator Co.,* 10 Del. Ch. 358, 92 Atl. 255, to mean that such repurchase could only occur when it would not diminish the corporation's ability to pay its debts or lessen the security of its creditors by reducing the amount of the assets of the company below the amount represented by the aggregate outstanding shares of the capital stock of the company. Upon the authority of that case, the United States court of appeals for the sixth circuit, in *Ashman v. Miller,* 101 F. (2d) 85, recently expressed the same view.  That this is the true rule, can hardly be doubted.[12]

Upon substantial evidence, the court found the payment by Dale R. Peterson & Co., Inc., to the appellants of the eighteen thousand dollars impaired that corporation's capital stock, and that it did not then have sufficient earned surplus with which to pay therefor.

The assignment is made there can be no stockholder liability without first determining that there is no director liability; but there is a finding of fact, supported

---

[10]"The text of the instant amendment seems to have been lifted word for word from the Deleware Corporation Act (Rev. Code Del. 1935, § 2051) with the exception that in the Washington statute the phase 'capital stock' has been substituted for the word 'capital.' " 23 Wash. L. Rev. 149.

"Every corporation organized under this chapter may purchase, hold, sell and transfer shares of its own capital stock; but no such corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation.  Shares of its own capital stock belonging to the corporation shall not be voted upon directly or indirectly. Nothing in this section shall be construed as limiting the exercise of the rights given by section 243 of this title."  8 Annotated Code of Delaware 130, § 160.

[11]*Washington Escrow Co. v. Blair,* 40 Wn. (2d) 432, 243 P. (2d) 1044.

[12]Ballentine on Corporations, § 258, p. 610 (Rev. ed. 1946).

by substantial evidence, if not uncontradicted evidence, that there is no director liability. Rule of Pleading, Practice and Procedure 18, 34A Wn. (2d) 81, set out in the margin,[13] was adopted by this court to meet this precise situation. All issues may be settled in a single action.

Other assignments deal with findings of fact, but it is sufficient to say in that respect that all are supported by substantial evidence.

The judgment is affirmed.

SCHWELLENBACH, DONWORTH, FINLEY, and ROSELLINI, JJ., concur.

---

[13]"Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money."

(The history of the rule and the reasons which brought it about are well summarized following Rule 18 in 3 Moore's Federal Practice (2d ed.) 1801.)