[No. 1569-1.    Division One.    September 4, 1973.]

JOHN FISK et al., *Appellants*, v. J. HARTLY NEWSUM et al., *Respondents*.

*Powell, Livengood, Dunlap & Silvernale* and *Robert P. Tjossem*, for appellants.

*Lane, Powell, Moss & Miller* and *John F. Sherwood*, for respondents.

WILLIAMS, J.—Plaintiffs, John Fisk and Wanda Fisk, his wife, instituted this action against J. Hartly Newsum and wife alleging attorney malpractice. The Fisks appeal from a summary judgment of dismissal.

Those facts, which are undisputed, are as follows: Bellevue Enterprises, Inc., was a corporation organized under the laws of this state and was engaged in the ambulance business. Of the 900 shares of common stock of the corpora-

tion, a man named Philip M. Retherford was the contract buyer of 450 shares from a third party. Fisk owned the other 450 shares. Sometime between October 31, 1969, and January 10, 1970, Retherford and Fisk decided that Fisk's interest should be sold to Retherford, and Newsum was brought in to handle the legal part of the transaction. During that time, Fisk was president and a director of the corporation. There was made available to Newsum in connection with the proposed transaction a financial statement of the corporation, prepared by its accountants without audit, which showed that, as of October 31, 1969, the corporation had an earned surplus of $18,750.

On January 10, 1970, the following transactions took place:

(1) Retherford purchased 65 shares of the common stock of the corporation from Fisk paying therefor $9,000, which he had borrowed, and a $1,000 note.

(2) Fisk and Retherford, as the newly elected corporation president, signed a redemption agreement whereby the corporation agreed to redeem the remaining 385 shares of Fisk's stock for $60,000, payable at the rate of $600 per month.

(3) The corporation executed a mortgage upon its real estate in favor of Fisk to secure performance of the redemption agreement.

(4) The corporation requested that a financial statement be prepared to show its condition as of January 31, 1970.

A financial statement of the affairs of the corporation as of January 31, 1970, was prepared without audit by its accountants. The statement showed retained earnings of $23,719.44 and did not contain any reference to the $60,000 obligation to Fisk. In April, 1970, the January 31 financial statement, a subordination agreement signed by Fisk, and normal loan documents were delivered to Peoples National Bank of Washington, which then loaned $54,040 to the corporation. Forty-five thousand, one hundred sixty-six dollars and ninety cents of this sum was used to pay off corporate

loans from another bank, which loans Fisk had personally guaranteed.

In the fall of 1970, the corporation, at the instance of several of its general creditors, was placed in receivership in the Superior Court for King County. At that time, Fisk had received $5,400 from the corporation in payments upon the redemption agreement. The corporation mortgage in favor of Fisk to secure the redemption agreement payments, which had been held by Newsum, was recorded about this time and foreclosure proceedings instituted by Fisk. This foreclosure action was consolidated with the receivership action for trial. The trial resulted in the court finding:

> That at the time of execution of the Agreement for Redemption of Stock, Bellevue Enterprises, Inc., did not have any unreserved and unrestricted earned surplus available from which to redeem John Fisk's shares of stock.

Finding of fact No. 5.

> That as a condition prior to loaning money to Bellevue Enterprises, Inc., Peoples National Bank of Washington requested the execution of a Subordination Agreement by each of the principal creditors of Bellevue Enterprises, In., as listed on said balance sheet and financial statement, including John Fisk.

Finding of fact No. 11.

As to the subordination agreement, the court found that, under its provisions,

> John Fisk shall subordinate any claims he might have against Bellevue Enterprises, Inc., so long as the corporation remains indebted to Peoples National Bank of Washington; that John Fisk agrees not to sue on any claim he may have nor to enforce any security in or thereafter existing, nor take any lien upon the property of Bellevue Enterprises, Inc., as long as the corporation remains indebted to Peoples National Bank; that John Fisk directs any receiver of Bellevue Enterprises to pay the full amount of the claim of Peoples National Bank of Washington to said Bank before paying anything to John Fisk and John Fisk further agrees to assign to the Bank his

rights to payments which he might otherwise collect from said receiver; and John Fisk agrees not to take or receive any lien by way of mortgage or join in any other measure or advantage contrary to the terms of the Subordination Agreement while Bellevue Enterprises, Inc., remains indebted to Peoples National Bank of Washington and should John Fisk take such action or join in such measure or advantage contrary to the terms of the Subordination Agreement, the Bank is given the right to have the same vacated, dissolved and set aside.

Finding of fact No. 12.

It developed in the receivership proceedings that there were insufficient assets to satisfy the secured claim of the Peoples National Bank, which had loaned the corporation $54,040. There was, therefore, no money for the general creditors of the corporation or for Fisk, and the latter's mortgage was invalidated as to them.

Fisk contends that there are genuine issues of fact concerning an attorney-client relationship, the appropriateness of the redemption documents, whether Newsum should have inquired into the financial condition of the corporation prior to January 10, 1970, so as to discover that the retained profit figure of $18,750 on the October 31, 1969, financial statement was false, and whether Newsum should have recorded the mortgage promptly. We believe that these are not genuine issues of material fact for the following reasons:

Counsel for Newsum concedes that there was an attorney-client relationship between Newsum and Fisk, so there is no issue there.

As to the redemption scheme, it is true that RCW 23A.08.030 prohibits a corporation from purchasing its own stock except out of unreserved and unrestricted capital surplus. *Jackson v. Colagrossi*, 50 Wn.2d 572, 313 P.2d 697 (1957). However, the statute does not prevent an agreement for the future purchase of stock out of earned surplus; it only prohibits the actual purchase if, at the time the purchase is made, there is insufficient unreserved and unrestricted capital surplus to do so. *Burk v. Cooperative*

*Fin. Corp.,* 62 Wn.2d 740, 384 P.2d 618 (1963). If therefore, on January 10, 1970 and subsequently, there had been sufficient capital surplus to make the payments, then the agreement would be valid. The trouble was, that, as the trial court in the receivership-mortgage foreclosure actions found, there was no capital surplus and therefore any payments made by the corporation pursuant to the redemption agreement were illegal.

■■ It is apparently Fisk's contention that Newsum should have investigated the October 31, 1969, financial statement, discovered that it was false, and so advised him. It is not disputed that Fisk was president and a director of the corporation until shortly before January 10, 1970. This made him an agent of the corporation and, as such, responsible for the statement. RCW 23A.08.470; *Carrigan v. Port Crescent Improvement Co.,* 6 Wash. 590, 34 P. 148 (1893). He does not claim that he requested Newsum to check the reliability of the statement, nor does he advance any reason why Newsum should have done so. On the contrary, the redemption agreement which Fisk signed states in part:

> John Fisk agrees and covenants that the financial statement prepared by the corporation's certified public accountants for the period ending October 31, 1969 is an accurate reflection of the corporation's financial condition and that there are no liabilities to the corporation, contingent or otherwise, not reflected in such financial statement.

Against these circumstances, the bare claim of Fisk that Newsum should have investigated the financial statement does not create a genuine issue. *Easton v. Chaffee,* 16 Wn.2d 183, 132 P.2d 1006 (1943).

■ We turn next to the question of the recording of the mortgage. At the outset, Fisk was the owner of 450 common shares of stock of the corporation. The transaction of January 10, 1970, was not only a method by which Retherford could acquire all of the shares of the company, but one whereby Fisk's position would be converted from that of a holder of common shares to that of a secured creditor of

the corporation. It is obvious that Fisk could not legitimately obtain a secured position in derogation of the rights of the general creditors of the corporation. As between Fisk and Retherford, however, the scheme did permit Retherford to acquire an increasingly proportionate interest in the company from the profits of the corporation, and it gave Fisk a secured position in the real estate of the corporation as against Retherford. This was the only possible use to which the mortgage could be put, and, as Retherford signed it as a corporate officer, he had actual knowledge of its existence, and recording would not change either his or Fisk's relationship one iota. The receivership action properly invalidated the mortgage to permit the general creditors to participate in the distribution of the assets of the corporation before permitting Fisk as a shareholder to do so.

The receivership court properly ordered Fisk to return the $5,400 paid to him out of the general assets of the corporation. There was nothing Newsum could have done to make these payments legal if the earned surplus figure was false, which the trial court in the receivership proceedings found it to be. Fisk contends that he lost the $5,400, but in actuality he only was required to pay back what he had illegally received in the first place. And he makes no claim that his 385 shares of stock in the corporation will not be delivered back to him upon his request.

The next reason why Fisk was not damaged by Newsum's actions is that in April, 1970, Fisk signed and delivered an agreement subordinating his claim against the corporation to that of the Seattle bank which loaned the corporation $54,040. Newsum had nothing to do with this activity. The agreement completely wiped out any chance Fisk had of realizing out of the corporation assets. Even if the redemption agreement was good, and even if the mortgage securing its performance was a first lien against the real estate of the corporation, Fisk still would receive nothing because there were insufficient assets in the corporation to pay off the bank to which he had subordinated his claim.

Fisk does not challenge the existence or legality of the subordination agrement; it would do him no good if he did because, as has been seen, the trial court in the receivership proceedings to which Fisk was a party upheld its validity. His only challenge to the agreement is that the officer of the loaning bank who reported by affidavit that there were insufficient assets of the corporation to pay off the bank's mortgage did not do so on personal knowledge. On the contrary, it appears from the affidavit of the bank officer that he did have personal knowledge, and Fisk meets this by assertion only, and hence does not establish a genuine issue of material fact to be tried. *Meadows v. Grant's Auto Brokers, Inc.*, 71 Wn.2d 874, 431 P.2d 216 (1967).

We hold that Fisk suffered no loss as a result of the actions of Newsum, and that there is no genuine issue of material fact in the case.

The judgment is affirmed.

SWANSON, C.J., and CALLOW, J., concur.