[No. 3514-1.    Division One.    July 6, 1976.]

AMERICAN LINEN SUPPLY COMPANY, *Respondent*, v. NURSING HOME BUILDING CORPORATION, *Appellant.*

*Casey, Pruzan, Kovarik & Shulkin,* and *Martin Godsil,* for appellant.

*Williams, Lanza, Kastner & Gibbs, William J. Leedom, Davis, Wright, Todd, Riese & Jones,* and *Richard A. Derham,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

American Linen Supply Company, d/b/a Maryatt Industries (American), sued Nursing Home Building Corporation (Building Corporation), d/b/a Arden Nursing Home, and others for moneys claimed to be owing to American for commercial laundry services and supplies furnished to the Arden Nursing Home.

In the trial court, American was granted a summary judgment against the Building Corporation in the sum of $11,423.28 plus interest. The Building Corporation appeals.

The facts out of which this case arose are established by affidavits filed herein as follows.

H. P. Clausing (Clausing) and Glenn E. Deer (Deer)

were the sole shareholders of the Building Corporation which owned and operated the Arden Nursing Home in Seattle. In January of 1970, Richard L. DeHart and Phoebe DeHart, husband and wife (DeHarts) purchased all of the stock in the Building Corporation on an installment contract calling for a total payment of $700,000.

The contract by which the DeHarts purchased the stock specifically contemplated that they could dissolve the Building Corporation and personally take over its assets. Pursuant to this, the DeHarts filed a statement of intent to dissolve the corporation, as required by RCW 23A.28.050. A certificate of assumed business name was then filed declaring Mr. DeHart to be a sole trader doing business under the firm name and style of Arden Nursing Home. This occurred in April of 1970. Thereupon the assets of the Building Corporation were transferred from the corporation to the DeHarts subject to all of the corporation's liabilities. As was to develop, dissolution proceedings were never completed and a certificate of dissolution required by RCW 23A.28.120 to terminate the existence of the corporation was never issued by the Secretary of State.

Then in July of 1970, the DeHarts entered into a contract with American. It is conceded by all parties to this appeal that the contract with American was entered into by the DeHarts acting as sole proprietors of the nursing home. Under this contract, American was to supply various linen and laundry services to the nursing home for an agreed consideration. American commenced furnishing linens and services to the nursing home that same month.

In November of 1970, the DeHarts concluded that they would not go through with the dissolution of the corporation. This decision was duly recorded in the minutes of a meeting of the shareholders of the Building Corporation along with approval of the following resolution:

A motion was made that the Nursing Home Building Corporation will *hold harmless and indemnify* Richard L. DeHart and Phoebe D. DeHart as individuals for signing personally for any mortgages, notes, loans, *contracts* or

leases for equipment or automobiles for and on the behalf of the Nursing Home Building Corporation or Doing Business As Arden Nursing Home. The motion was duly seconded and unanimously approved.

(Italics ours.) This resolution was acted on by the DeHarts who transferred business assets back to the Building Corporation.

The following month, a statement revoking the voluntary dissolution proceedings by consent of the shareholders was filed pursuant to RCW 23A.28.070.

After the Building Corporation began operating the Arden Nursing Home, American continued to supply the nursing home with linens as before and the nursing home continued to accept them as before. Invoices were rendered to the nursing home by American as before and were accepted as before and payments on account continued to be made to American.

Some months later, Clausing and Deer commenced an action to forfeit their sales contract with the DeHarts alleging delinquencies in the performance thereof by the DeHarts.[1] At the request of Clausing and Deer, the superior court in that case appointed an operating receiver in May of 1971. The receiver took over the assets of the Building Corporation as well as the operation of the nursing home.

American continued furnishing its laundry service to the Arden Nursing Home for approximately a month following appointment of the receiver. Between July 15, 1970, when American first commenced doing business with the nursing home, and June 16, 1971, when it ceased doing so, linen and supplies totaling $21,634.95 were furnished and payments totaling $10,211.67 were received, leaving an unpaid balance of $11,423.28 owing to American. The written contract between American and the DeHarts provided for payment

[1]The contract forfeiture action is cause No. 737340 filed in the Superior Court of the State of Washington for King County. It is entitled "H. P. Clausing and Glenn E. Deer, Plaintiffs, v. Richard L. DeHart and Phoebe DeHart, his wife, and the marital community composed thereof; and Nursing Home Building Corporation, d/b/a Arden Nursing Home, Defendants."

of interest of 1 percent per month on all past due accounts. American filed a claim in the receivership proceeding for such sums.

A few creditors' claims were paid during the pendency of the receivership. Most claims, however, including American's, were not paid.

A final hearing was held in the receivership on November 22, 1972, at which various creditors and their representatives were present. American's counsel and Clausing, Deer, and their counsel were all present. Certain representations were made to the assembled creditors and attorneys by Clausing. The fact of the representations made at that time by Clausing is not disputed but the nature of the representations is. Neither is it disputed that American as well as the other creditors withdrew their objections to the discharge of the receiver on the basis of such representations.

Thereupon a final order in the receivership was entered on November 22, 1972. It approved the receiver's final report and ordered all of the shares of stock in the Building Corporation to be returned to Clausing and Deer. The order also provided that it was

> FURTHER ORDERED that ROBERT H. THOMPSON as receiver of NURSING HOME BUILDING CORPORATION shall turn over, assign, deed or transfer all right, title and interest in all property in his possession or under his control as said receiver, to NURSING HOME BUILDING CORPORATION including, but not limited to, personal and real property, chose[s] in action, defense or prosecution of all lawsuits, and *subject to the debts or claims of creditors set forth in the Final Report,* including attachments, herein.

(Italics ours.)

The Building Corporation, now returned to the full control of Clausing and Deer, refused to pay American. American then commenced the present lawsuit.

After American commenced its action in the present case, it brought a motion for summary judgment pursuant to CR 56. On December 17, 1974, the trial court granted American

a summary judgment against the DeHarts and the Building Corporation in the sum of $11,423.28 plus interest at the rate of 1 percent per month from June 16, 1971. The DeHarts have not appealed.

In the order granting summary judgment, the trial court listed the documents it had considered. The trial court in its written order also specifically ruled that there was no genuine issue of material fact as to any of the following:

> American Linen Supply Company furnished services pursuant to a written contract with the DeHarts. Such services were received by the DeHarts during a period of time when they were acting as sole proprietors d/b/a Arden Nursing Home and, after revocation of the intent to dissolve the corporation, that these services were received by Nursing Home Building Corporation d/b/a Arden Nursing Home. There is no satisfactory evidence disputing the amount unpaid for said services or the reasonableness thereof, together with interest accruing thereon. The amount of charges incurred for services rendered to Arden Nursing Home at the time the DeHarts were operating said Nursing Home as a sole proprietorship have been paid in full. The balance presently remaining and the subject of this suit is a balance for services rendered to, and received by, Nursing Home Building Corporation.

Five issues are dispositive of this appeal.

## ISSUES

ISSUE ONE. Did the trial court err in considering an affidavit of the DeHarts' attorney in ruling on the motion for summary judgment?

ISSUE TWO. Did the trial court err in considering American's answers to interrogatories, which had been verified by its attorney, in ruling on the motion for summary judgment?

ISSUE THREE. Was the Building Corporation liable to American for linen supplied to the nursing home by American during the period of time during which the Building Corporation operated the nursing home, when the written contract American had was with the sole proprietorship which previously operated the nursing home?

ISSUE FOUR. Did any genuine issue of material fact exist to bar the granting of American's motion for summary judgment against the Building Corporation?

ISSUE FIVE. Can interest in excess of 10 percent per annum accrue on a judgment if the contract on which the judgment is based provides for a higher rate of interest?

### DECISION

ISSUE ONE.

■ CONCLUSION. An attorney's affidavit may be considered in ruling on a motion for summary judgment to the extent that it is based on testimonial knowledge.

The attorney's affidavit to which error is assigned was used primarily as a means of getting the contents of certain pleadings from other lawsuits into the record. The documents referred to and summarized in the affidavit were attached to the affidavit as required. CR 56(e). The attached copies of documents establish that the portion of the affidavit referring to such documents was based on testimonial knowledge.

Unwise or impractical though it might otherwise be for an attorney of record in a case to make an affidavit in support of a client's case, such an affidavit is entitled to the same consideration as any other affidavit based upon testimonial knowledge. *Meadows v. Grant's Auto Brokers, Inc.*, 71 Wn.2d 874, 880, 431 P.2d 216 (1967); *Cofer v. County of Pierce*, 8 Wn. App. 258, 262, 505 P.2d 476 (1973).

To the extent that the affidavit contained the attorney's conclusions and other surplusage, it is to be disregarded. *Peninsula Truck Lines, Inc. v. Tooker*, 63 Wn.2d 724, 726, 388 P.2d 958 (1964). The rest of the affidavit, however, can appropriately be considered. 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2722 (1973). Nothing in the summary judgment indicates that the conclusions and surplusage contained in the affidavit were considered. We find no error in that regard.

ISSUE TWO.

■■ CONCLUSION. Answers to interrogatories may be considered in ruling on a motion for summary judgment as

long as such answers satisfy the other requirements of CR 56 and contain admissible material. A corporation's answers to interrogatories are not rendered defective because they were verified by its attorney.

Error is assigned to the trial court's consideration of American's answers to interrogatories in connection with the summary judgment motion, the same having been verified by its attorney.

American is a private corporation and, therefore, can answer interrogatories "by any officer or agent . . ." CR 33(a). Answers on behalf of American were answers by an "agent" and therefore authorized. 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2172 (1970).

Our state's summary judgment rule permits consideration of the "pleadings, depositions, and admissions on file, together with the affidavits, if any, . . ." CR 56(c). It does not specifically authorize the use of answers to interrogatories. Our present CR 56 is comparable to the previous federal rule, Fed. R. Civ. P. 56. In 1963, Fed. R. Civ. P. 56 was amended to specifically permit the use of answers to interrogatories on a motion for summary judgment. The phrase "answers to interrogatories" was inadvertently omitted from Fed. R. Civ. P. 56 when it was originally adopted. See proposed amendments to Fed R. Civ. P. 56, Advisory Committee's Note at page 648, 31 F.R.D. (1963). It was undoubtedly omitted from CR 56, our own rule, for the same reason.

When our rules relating to interrogatories to the parties, CR 33, and to summary judgment, CR 56, are read together, it seems clear that they state to the same effect as the amended federal rule does. In accordance with most courts which have considered the question, we hold that answers to interrogatories may be considered in ruling on a motion for summary judgment so long as such answers satisfy the other requirements of CR 56. *See* 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2722 (1973), and Trautman, *Motions for Summary Judgment: Their Use and Effect in Washington*, 45 Wash. L. Rev. 1, 10 (1970).

As in the case of affidavits, answers to interrogatories cannot be considered in connection with a motion for summary judgment if they are based on hearsay or on information and belief. *Meadows v. Grant's Auto Brokers, Inc., supra; Stringfellow v. Stringfellow,* 53 Wn.2d 639, 641, 335 P.2d 825 (1959).

The trial court did not err in considering American's answers to interrogatories in ruling on the motion for summary judgment.

ISSUE THREE.

CONCLUSION. The Building Corporation as the successor to the sole proprietorship which formerly operated the nursing home is liable on the sole proprietorship's contract with American on each of three separate bases: (a) implied contract; (b) express contract; and (c) collateral estoppel.

a. Implied Contract.

■ After the Building Corporation took over the operation of the nursing home from the sole proprietorship in the latter part of 1970, it accepted the benefits of the contract with American and knowingly continued to operate under it until June of 1971. The Building Corporation thus bound itself to the contract with American on principles of implied contract:

> "It is not necessary that a party should deliberately agree to be bound by the terms of a contract to which he is a stranger, if, having knowledge of such contract, he deliberately enters into relations with one of the parties, which are only consistent with the adoption of such contract. If a person conduct[s] himself in such manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations." *Wiggins Ferry Co. v. Ohio & Mississippi R. Co.,* 142 U. S. 396, 408.

*National Credit Co. v. Casco Co.,* 173 Wash. 275, 276, 22 P.2d 670 (1933). *Accord, Trust Fund Servs. v. Trojan Horse,*

*Inc.*, 15 Wn. App. 140, 548 P.2d 344 (1976); *Carr v. Settle Constr. Co.*, 11 Wn. App. 336, 340, 522 P.2d 849 (1974).

b. Express Contract.

When the DeHarts' sole proprietorship ceased to operate the nursing home and the Building Corporation again commenced operating it, the DeHarts turned the assets of the business back to the corporation and, in its minutes, it agreed to "hold harmless and indemnify [the DeHarts] as individuals for signing personally any . . . contracts . . . for and on behalf of . . . Building Corporation." This corporate action has not been shown to be improper or invalid in any way. The express undertaking by the Building Corporation encompassed the American contract on which the DeHarts were held liable in the trial court.

c. Collateral Estoppel.

The order terminating the receivership and transferring all of the corporate property back to the Building Corporation did so "subject to the debts or claims of creditors set forth in the final report." American was one of the creditors and its debt or claim was one of those referred to in the order. In the context of that proceeding, the words "subject to" mean "liable" or "answerable for." Black's Law Dictionary 1594 (4th ed. 1951). The transfer of the assets by the receiver to the corporation "subject to" the debt or claim of American meant that those assets were liable to or answerable for American's debt or claim.

■■ An order which accepts the receiver's final report and orders his discharge is a judgment. *Garrett v. Nespelem Consol. Mines, Inc.*, 23 Wn.2d 824, 826, 162 P.2d 591 (1945); CR 54(a)(1). The order under discussion was therefore a judgment. The Building Corporation, as well as American, were parties to the action in which that judgment was entered. The doctrine of collateral estoppel by judgment precludes parties or their privies from relitigating an issue which has been finally determined by a court of competent jurisdiction after the party against whom the estoppel is claimed has had the opportunity to fairly and

fully present that party's case. *Henderson v. Bardahl Int'l Corp.*, 72 Wn.2d 109, 115, 431 P.2d 961 (1967); *Davis v. Nielson*, 9 Wn. App. 864, 874, 515 P.2d 995 (1973). The doctrine of collateral estoppel thus also estops the Building Corporation from now denying that its assets are answerable for American's claim or debt.

The trial court did not err in holding the Building Corporation liable on the contract.

ISSUE FOUR.

CONCLUSION. The trial court correctly ruled that there was no genuine issue of material fact and granted American's motion for a summary judgment.

The Building Corporation contends that an issue of material fact exists as to the reasonableness of American's bill because the Clausing supplemental affidavit stated:

> we have always disputed the reasonableness of the bill regardless of who owed it and notified [American's] representatives of this fact.

It has not been made clear how the *reasonableness* of American's bill is material in a suit for a sum owing pursuant to the terms of a written contract, and where the amount owing on the contract is established by affidavit filed by the party moving for summary judgment. In any event, the Clausing supplemental affidavit is not sufficient to establish an issue of material fact.

The moving party having made an adequate showing as to the balance owing on the contract, it became incumbent on the nonmoving party to respond with probative evidence. *W.G. Platts, Inc. v. Platts*, 73 Wn.2d 434, 443, 438 P.2d 867, 31 A.L.R.3d 1413 (1968); *Bernal v. American Honda Motor Co.*, 11 Wn. App. 903, 906, 527 P.2d 273 (1974). This responding affidavit is required to set forth specific facts disclosing an issue of material fact and conclusionary statements of fact will not suffice. *Washington Osteopathic Medical Ass'n v. King County Medical Serv. Corp.*, 78 Wn.2d 577, 582, 478 P.2d 228 (1970); *Hodgins v. State*, 9 Wn. App. 486, 490, 513 P.2d 304 (1973). This the Clausing supplemental affidavit did not do.

The bare assertion that "we have always disputed the reasonableness of the bill" does not establish a genuine issue of material fact as required in order to prevent a summary judgment. *See Bates v. Grace United Methodist Church*, 12 Wn. App. 111, 115, 529 P.2d 466 (1974); *Fisk v. Newsum*, 9 Wn. App. 650, 654, 513 P.2d 1035 (1973).

The Building Corporation further suggests that there were a number of other issues of material fact such as how the DeHarts applied the funds, whether the DeHarts used corporate funds to pay personal expenses and as to American's knowledge of this, whether the DeHarts returned all of the corporate assets to the Building Corporation, and whether the DeHarts exercised good faith throughout.

Here the jurisdiction of the trial court over the parties and the cause is acknowledged. As we have here held, the Building Corporation was liable on the contract for laundry services and supplies furnished by American. Affidavits, which were not controverted by a showing of any specific facts to the contrary, established that $11,423.28 plus interest was due and owing by the Building Corporation to American and that such sum remained due and unpaid despite demands for payment. The trial court correctly ruled that there was no genuine issue of material fact and entered a summary judgment in favor of American against the Building Corporation. *See Norm Advertising, Inc. v. Monroe St. Lumber Co.*, 25 Wn.2d 391, 398, 171 P.2d 177 (1946). The other matters raised by the Building Corporation, to use the terminology of *Bates v. Grace United Methodist Church, supra* at 114, come within the category of "unanswered questions" rather than "genuine issues of material fact", and as such cannot defeat a motion for summary judgment.

ISSUE FIVE.

■ CONCLUSION. A judgment founded on a written contract providing for the payment of interest until paid at a specified rate shall bear interest at the rate specified in the contract but cannot exceed 10 percent per annum.

An uncontroverted affidavit filed by American estab-

lished that American's contract provided for interest at the rate of 1 percent per month on all past due accounts. The summary judgment entered on December 17, 1974, awarded American judgment against the Building Corporation for $11,423.28 plus interest of 1 percent per month from and after June 16, 1971, to the date of the judgment *until paid*. By statute, interest on the amount of the judgment is limited to 10 percent. RCW 4.56.110. While interest at the rate of 1 percent per month was properly allowable to the date of judgment, a maximum of only 10 percent per annum was allowable after the date of the judgment. *Smith v. Deane*, 125 Wash. 368, 216 P. 6 (1923).

The judgment herein is therefore amended to provide that the interest running on the judgment of the plaintiff, American, after the date of the judgment, December 17, 1974, shall in no event exceed 10 percent per annum.

The judgment, as modified by the 10 percent per annum post judgment interest limitation, is affirmed.

CALLOW, J., and HOWARD, J. Pro Tem., concur.